# TABLE OF CONTENTS

<u>Page No.</u>

**CHAPTER 1 – GENERAL PROVISIONS AND DEFINITIONS** ........................................................1

    Article 1.01   Work to be Done ..............................................................................1
    Article 1.02   Definitions ......................................................................................1
    Article 1.03   Notices ...........................................................................................5
    Article 1.04   General Rules of Interpretation .....................................................6
    Article 1.05   Character of Work ..........................................................................6
    Article 1.06   Differing Site Conditions ..............................................................7
    Article 1.07   Assignment/Change in Control ......................................................8
    Article 1.08   Subcontracts ...................................................................................8
    Article 1.09   Preliminary Occupancy .................................................................9
    Article 1.10   Accurate Pricing Data and No False/Fraudulent/Misleading Submittals ...............9
    Article 1.11   Confidential Information, Approval for Publication of Reports
               And Press Releases .....................................................................10

**CHAPTER 2 – PROVISIONS RELATING TO TIME** ...............................................................14

    Article 2.01   Time For Commencement and Completion of Work ...........................14
    Article 2.02   Substantial Completion and Final Completion ....................................14
    Article 2.03   Contractor's Detailed Schedule of Work ...........................................15
    Article 2.04   Authority Damages for Delay ........................................................17
    Article 2.05   Extension of Time .........................................................................17
    Article 2.06   Extension of Time Not Cumulative ................................................19
    Article 2.07   Contractor's Damages for Delay .....................................................19
    Article 2.08   Stop Work Order ...........................................................................21
    Article 2.09   Termination for Convenience by the Authority ................................22
    Article 2.10   Termination for Convenience – Integrity Matters.............................23

**CHAPTER 3 – PRICE AND PAYMENTS** ...............................................................................24

    Article 3.01   Price to Include ............................................................................24
    Article 3.02   Variable Quantities Clause ...........................................................24
    Article 3.03   Detailed Cost Breakdown for Lump Sum Items ...............................24
    Article 3.04   Prompt Payment ...........................................................................24
    Article 3.05   Progress Payments ........................................................................25
    Article 3.06   Payment Upon Substantial Completion ...........................................27
    Article 3.07   Provisions Relating to Final Payment .............................................28
    Article 3.08   Payments Related to Guarantee Obligations....................................29
    Article 3.09   Set Offs, Withholdings and Deductions..........................................30
    Article 3.10   Payment by the Contractor to Subcontract(s) and Supplier(s)..............30
    Article 3.11   No Estoppel an No Waiver ............................................................31

**CHAPTER 4 – CHANGES TO THE CONTRACT** ........................................................32

    Article 4.01    No Oral Changes ..................................................................32
    Article 4.02    Clarification of Contract Drawings.......................................32
    Article 4.03    Extra Work ...........................................................................32
    Article 4.04    Change Order Procedure and Basis for Payment .................32
    Article 4.05    Extra Work Directive ...........................................................36
    Article 4.06    Deleted Work .......................................................................36

**CHAPTER 5 – SECURITY FOR THE PERFORMANCE OF WORK** ..............................38

    Article 5.01    Performance and Payment Bonds .........................................38
    Article 5.02    Retained Percentage .............................................................38
    Article 5.03    Withholding Money Due Contractor to Meet Claims, Liens or Judgements........38
    Article 5.04    Substitution of Approved Securities .....................................39
    Article 5.05    Use of Monies Withheld .......................................................40

**CHAPTER 6 – CONTRACTOR'S LIABILITY AND INSURANCE** ...............................41

    Article 6.01    Indemnified Parties ..............................................................41
    Article 6.02    Responsibility for Injuries to Persons or Property ...............41
    Article 6.03    Indemnifications...................................................................41
    Article 6.04    Risk of Loss to the Work ......................................................42
    Article 6.05    Required Insurance ..............................................................43

**CHAPTER 7 – CONTRACTOR'S DEFAULT** ........................................................44

    Article 7.01    Event of Default....................................................................44
    Article 7.02    Notice of Default/Opportunity to Cure .................................44
    Article 7.03    Remedies in the Event of Default .........................................44
    Article 7.04    The Contracting Party and the Authority May Avail Themselves
                  of All Remedies ...................................................................45

**CHAPTER 8 – AUTHORITY OF THE ENGINEER: DISPUTES AND CLAIMS** .........................46

    Article 8.01    Authority of the Engineer......................................................46
    Article 8.02    Approvals by the Engineer; No Liability ..............................46
    Article 8.03    Disputes Resolution Procedure ............................................46
    Article 8.04    Additional Provision Relating to the Prosecution of Claims for
                  Money Damages...................................................................48
    Article 8.05    Choice of Law, Consent to Jurisdiction and Venue...............49

**CHAPTER 9 – INSPECTION, TESTING AND GUARANTEES** .......................................................51

Article 9.01     Inspection ...................................................................51
Article 9.02     Uncovering Finished Work ..........................................51
Article 9.03     Tests ...........................................................................51
Article 9.04     Warranty of Construction ...........................................52
Article 9.05     Specific Guarantees ....................................................52
Article 9.06     Manufacturer's Warranties and Guarantees ...............53

**CHAPTER 10 – MISCELLANEOUS PROVISIONS** ...................................................................54

Article 10.01     New York Labor Law ................................................54
Article 10.02     Equal Employment Opportunities for Minority Group Members and Women .....56
Article 10.03     Antitrust Assignment ...............................................57
Article 10.04     Patent, Copyrights and Infringement Claims ..........57
Article 10.05     Relationship Between Contracting Party or Authority and Others .......59
Article 10.06     Audit and Inspection .................................................59
Article 10.07     Independent Contractor ............................................59
Article 10.08     General Representations and Warranties ...................59
Article 10.09     Prohibition on Purchase of Tropical Hardwoods ......61
Article 10.10     Omnibus Procurement Act of 1992 ..........................62
Article 10.11     Compliance with Laws, Rules and Regulations ........62
Article 10.12     Grand Jury Testimony ...............................................62
Article 10.13     Compliance with Section 1269-g of the Public Authorities Law .......63
Article 10.14     Asian Longhorned Beetle ..........................................64
Article 10.15     Contract Documents Contain All Terms ...................65
Article 10.16     All Legal Provisions Included ...................................65
Article 10.17     Determinations Regarding Ambiguities and Order of Precedence .......65
Article 10.18     Severability ...............................................................66
Article 10.19     Survival .....................................................................66
Article 10.20     Diesel Emission Reduction Act .................................66

**CHAPTER 11 – FEDERAL PROVISIONS** ...................................................................................67

Article 11.01     Federally Required Provisions ..................................67
Article 11.02     Drug and Alcohol Testing .........................................67

Contract Execution Pages ..................................................follow Contract Terms and Conditions

## CHAPTER 1 - GENERAL PROVISIONS AND DEFINITIONS

**ARTICLE 1.01      WORK TO BE DONE**

A.      The Contractor shall do all work including furnishing all labor, materials, plant, tools, supplies and other means of construction necessary for completion of the Project in accordance with the Contract Documents.

B.      Miscellaneous and Incidental Work.  The Contractor will protect, support and maintain all structures, which includes the Railroad, and any other real property whether owned by the Authority or any other person or entity, with their appurtenances and connections as the same may be affected by the Contractor's performance of the Work; and promptly reconstruct and restore all structures which are damaged thereby to at least as good a condition as existed before the construction was begun.  All such work shall be known as "Miscellaneous and Incidental Work."

C.      The words "Work" or "Project" shall mean all matters and things herein agreed to be constructed, furnished, installed, or done, by or on the part of the Contractor and includes Miscellaneous and Incidental Work.

**ARTICLE 1.02      DEFINITIONS**

A.      The words "addendum" or "addenda" to mean the additional contract provisions issued in writing by the Authority prior to the receipt of bids.

B.      The word "Authority," or the initial letters "NYCTA," or "TA," or initial letters of like import to mean the New York City Transit Authority, a public benefit corporation existing by virtue of Article 5, Title 9 of the Public Authorities Law of the State of New York and any other authority, board, body, commission, official or officials to which or to whom the powers now belonging to the said Authority in respect to the location, construction, equipment, maintenance and operation of transit facilities shall, by virtue of any act or acts, hereafter pass or be held to appertain.

C.      The words "Award Date" to mean the date the Notice of Award is issued.

D.      The words "Beneficial Use" shall mean a written determination by the Engineer that a discrete portion of the Work or identified equipment is sufficiently complete and fit for its intended purpose, in accordance with the Contract, that the Authority is able to physically occupy such portion of the Work or utilize such equipment.  The portions of the Work and the equipment subject to a determination of Beneficial Use, if any, are identified in the **SPECIAL CONDITIONS**.

E.      The words "City" or "New York" to mean the City of New York according to its boundaries as of the Award Date unless in the case of the words "New York" the context indicates that the State of New York is intended.

F.  The word "Consultant" to mean the consulting engineer or other person or firm hired by the Authority to act on behalf of the Engineer to perform certain services, including but not limited to design or inspection relating to the Project. For purposes of this Contract, the Consultant, his officers and employees shall be deemed agents of the Authority.

G.  The words "Contract" and "Contract Documents" to mean collectively the Information For Bidders, the Information for Bidders Data Sheet, the Bid, the Contract Terms And Conditions and Execution Pages, the Specifications, all Addenda issued, the Special Conditions, the Bonds, the Appendix, the Contract Drawings, and the Notice Of Award, as applicable. The Contract and Contract Documents are also deemed to include by reference those portions of the Responsibility Questionnaire which contain additional conditions and obligations on the contractor and rights in favor of the Authority.

H.  The word "Contractor" to mean the individual, firm or corporation, its successors and assigns, that enters into the Contract to perform the Project. For convenience, the Contractor is hereinafter referred to as if the Contractor were a business entity and will ordinarily be referred to as "it". The word "it", as the sense may require, includes "he", "she" and "they".

I.  The words "Critical Path Method" or "Bar Chart" or the letters "CPM" to mean Contractor's proposed schedule of work as set forth below in **ARTICLE 2.03, CONTRACTOR'S DETAILED SCHEDULE OF WORK**.

J.  The words "daily newspapers" to mean any newspaper regularly published in New York every day or every day except Saturdays, Sundays and holidays.

K.  The words "directed," "required," "permitted," "ordered," designated," "selected," "prescribed" or words of like import used in the Specifications or upon the Contract Drawings to mean respectively, the direction, requirement, permission, order, designation, selection or prescription of the Engineer; and similarly the words "approved," "acceptable," "satisfactory," "equal," "necessary," or words of like import, to mean, respectively, approved by, or acceptable or satisfactory to, or equal, or necessary in the opinion of the Engineer.

L.  The letters "DOT" to mean the United States Department of Transportation. (See also definitions (21), with respect to "Government", and (45), with respect to the Federal Transit Administration.)

M.  The word "Engineer" to mean the individual designated in the Notice of Award to administer the Contract (except for those business functions reserved for the Division of Materiel's designee), or any replacement for such individual who shall be subsequently designated by the Authority. The words "Chief Engineer" to mean the officer designated by the Authority to resolve technical disputes as set forth below in **ARTICLE 8.03, DISPUTES RESOLUTION PROCEDURE**.

N.  The words "Excusable Delay" to mean delays which satisfy the criteria set forth below in **ARTICLE 2.05, EXTENSION OF TIME**.

O.   The words "existing structure" to mean all real property, used, owned or leased by the Authority in place on the Award Date or installed thereafter by other contractors, the City, or persons or firms employed by the Authority during the life of this Contract.

P.   The words "Extra Work" to mean the changes to the Contract as fully set forth below in **ARTICLE 4.03, EXTRA WORK**.  (For "Deleted Work", see **ARTICLE 4.06, DELETED WORK**).

Q.   The words "Final Completion" to mean the completion of all Work to the satisfaction of the Engineer, including all Remaining Work, as set forth in **CHAPTER 2, PROVISIONS RELATING TO TIME**.

R.   The words "Final Payment" to mean the payment described below in **ARTICLE 3.07, PROVISIONS RELATING TO FINAL PAYMENT**.

S.   The words "Force Majeure" to mean acts of God, fire, earthquake, explosion, epidemic, riots, civil disturbance, strike, war, injunctions of governmental entities, embargoes, blockades or excessive inclement weather based on data from the National Oceanic and Atmospheric Administration.

T.   The words "furnish" or "furnishing" to mean providing, manufacturing, fabricating and delivering to the site of the Project all materials, plant, power, tools, patterns, supplies, appliances, vehicles and conveyances necessary or required for the completion of the Project.

U.   The words "Government," "United States Government," "federal" or words of like import to mean the United States of America.

V.   The words "Gross Sum Bid" or "Aggregate Total Bid" to mean the total of the items set forth in the Price Schedule of the Bid as stated in the **BID**.

W.   The words "Guarantee Work" or "Warranty Work" to mean all work required to be done by Contractor to meet its obligations under **CHAPTER 9, INSPECTION, TESTING AND GUARANTEES.**

X.   The words "Impact Costs" to mean the equitable adjustment to which Contractor may be entitled in accordance with **ARTICLE 2.07, CONTRACTOR'S DAMAGES FOR DELAY**.

Y.   The word "Inspector" to mean any representative of the Engineer designated by him to act as inspector.

Z.   The words "installation" or "install" or "installing" to mean completely assembling, erecting and connecting all material, parts, components, appliances and supplies and related equipment necessary or required for the completion of the Project.

AA.  The words "Miscellaneous and Incidental Work" to mean the work described in **ARTICLE 1.01, WORK TO BE DONE**.

BB.  The letters "MTA" to mean the Metropolitan Transportation Authority, and any other board, body, commission, official or officials to which or to whom the powers now belonging to the said authority in respect to the location, construction, equipment, maintenance and operation of transit facilities or the purchase of rapid transit cars under the provisions of Article 5, Title 11 of the Public Authorities Law of the State of New York shall, by virtue of any act or acts, hereafter passed or be held to appertain.

CC.  The words "New York City Transit System" or the letters "NYCTS" to mean the rapid transit and surface transit facilities of the Authority including all rolling stock, appurtenances and equipment.

DD.  The word "notice" to mean any written notice, direction or similar communication.

EE.  The words "Notice of Award" shall mean the document that apprises the Contractor that this Contract has been awarded by the Authority to the Contractor and is in full force and effect.

FF.  The words "Preliminary Estimate" or "Preliminary Estimate Certificate" shall mean the document prepared by the Engineer in connection with the amount to be invoiced by Contractor during a billing period.

GG.  The words "Progress Payment" shall mean the periodic payment to be made to the Contractor by the Authority in accordance with **ARTICLE 3.05, PROGRESS PAYMENTS**.

HH.  The words "Project Site" or "Work Site" to mean the site or sites of the Work.

II.  The words "Punch List Work" to mean the minor defects or omissions identified by the Engineer in determining that the Work is Substantially Complete, which are to be completed prior to Final Completion of the Work as set forth below in **ARTICLE 2.02, SUBSTANTIAL COMPLETION AND FINAL COMPLETION**.

JJ.  The word "Railroad" to mean the rapid transit facilities of the Authority, including all appurtenances, rolling stock and equipment.

KK.  The words "Remaining Work" to mean the work which is to be completed after Substantial Completion as set forth below in **ARTICLE 2.02 SUBSTANTIAL COMPLETION AND FINAL COMPLETION**.

LL.  The words "State" or "New York State" to mean the State of New York.

MM.  The words "Stop Work Order" shall mean the suspension of the Work as set forth below in **ARTICLE 2.08, STOP WORK ORDER**.

NN.  The word "Subcontractor" to mean any person, firm or corporation, other than the employees of the Contractor, who contracts to furnish labor, or labor and materials, at the Work Site or in

connection with the Project, whether directly or indirectly on behalf of the Contractor and whether or not in privity of contract with the Contractor.

OO. The words "Substantial Completion" or "Substantially Complete" to mean the event fully set forth below in **ARTICLE 2.02, SUBSTANTIAL COMPLETION AND FINAL COMPLETION**.

PP. The words "Certificate of Substantial Completion" to mean the document issued by the Engineer in connection with Substantial Completion.

QQ. The word "Supplier" to mean any individual, firm or corporation that contracts to furnish materials, equipment or supplies for incorporation in or in connection with the Project.

RR. The words "Total Contract Price" or "TCP" shall mean the total amount payable to the Contractor in accordance with **CHAPTER 3, PRICE AND PAYMENTS,** for the Work (as same may be adjusted in accordance with **CHAPTER 4, CHANGES TO THE CONTRACT**) and is based on the Gross Sum Bid (as extended based upon the actual quantities thereof ordered or required and provided in accordance with the Contract Documents) stipulated in the Price Schedule of the Bid.

SS. The letters "FTA" to mean the United States Department of Transportation, Federal Transit Administration.

TT. The words "Work" or "Project" shall be as described below in **ARTICLE 1.01, WORK TO BE DONE**.

UU. Elevation 100 as referred to in this Contract is 2.653 feet above mean sea level at Sandy Hook, United States Coast and Geodetic Survey datum.

VV. The words "Schedule Document" shall mean the base line and required updates to the Bar Chart or CPM, as required by **ARTICLE 2.03, CONTRACTOR'S DETAILED SCHEDULE OF WORK** and the **SPECIFICATIONS**.

## ARTICLE 1.03    NOTICES

A. The delivery of any notice, direction, or communication to the Contractor at the address set forth in the Bid or to the Authority at the address specified in the Notice of Award shall be made by depositing the same in a postpaid wrapper directed to the aforesaid addresses in any post office box regularly maintained by the United States Postal Service and shall be deemed to be sufficient service thereof as of the earlier of the date of such actual delivery or three days after such depositing. The address may be changed at any time by notice in writing from the Contractor to the Engineer. Nothing contained herein shall be deemed to preclude or render inoperative the personal service of any notice, direction or communication upon the Contractor, or if the Contractor be a corporation, upon any officer, director or designated agent thereof.

B.    Nothing in the above paragraph shall be deemed to serve as a waiver by the Authority of any requirements for the service of notice of process with respect to the filing of a claim or the institution of an action or proceeding as provided by law or elsewhere in this Contract.

**ARTICLE 1.04      GENERAL RULES OF INTERPRETATION**

A.    References to a specific paragraph, section, or schedule shall be construed as references to that specified paragraph, section or schedule in this Contract, unless otherwise indicated.

B.    References to any agreement or other instrument shall be deemed to include such agreement or other instrument as it may, from time to time, be modified, amended, supplemented, or restated in accordance with its terms.

C.    The terms "hereof," "herein," "hereby," "herewith," "hereto," and "hereunder" shall be deemed to refer to this Contract.

D.    All references to an "article" shall be deemed to refer to an article of these **CONTRACT TERMS AND CONDITIONS**, unless expressly indicated otherwise.

E.    The headings of the paragraphs are inserted for convenience only and shall not affect the construction or interpretation of this Contract.

F.    All references to "days" shall be deemed to be calendar days, unless otherwise expressly indicated.

G.    All references to "business days" shall be deemed to be references to the days of Mondays through Fridays, exclusive of Authority-observed holidays.

H.    All notices hereunder must be in writing, in accordance with **ARTICLE 1.03, NOTICES,** unless expressly indicated otherwise.

I.    As used herein the singular shall mean and include the plural; the masculine gender shall mean and include the feminine and neuter genders; and vice versa.

**ARTICLE 1.05      CHARACTER OF WORK**

A.    The Project is to be constructed for actual use and operation as part of an intra-urban transit system according to the best rules and usages of engineering, construction, and transit system equipment.

B.    In work of this character it is impossible either to show all details in advance or to forecast all exigencies precisely.  The Contract Documents are to be taken, therefore, as indicating the amount of work, its nature and the method of construction.

Where no specific requirements are given, the Work shall conform to the latest applicable standards of nationally recognized associations which sponsor the particular type of work

involved and materials shall conform to the standards of the Institute of Electrical and Electronic Engineers, the Electronic Industries Association, American Society of Mechanical Engineers, American Society of Heating and Ventilating Engineers, American National Standards Institute, American Society for Testing and Materials, and the National Board of Fire Underwriters.

In the event of any doubt as to the meaning of any portion of the **SPECIFICATIONS** or **CONTRACT DRAWINGS**, or in the event a standard of workmanship or material is not specified, the Contract shall be interpreted as requiring the Contractor to perform the work in the best and most workmanlike manner and to supply materials of the best class. The Contractor shall also perform the work with the highest regard to the safety of life and property and according to the lines, levels and directions given by the Engineer, and to the satisfaction of the Authority, as well as any provision set forth in the specifications.

## ARTICLE 1.06     DIFFERING SITE CONDITIONS

A.    The Contractor shall promptly, and before such conditions are disturbed, notify the Engineer in writing of: (1) latent physical conditions at the site differing materially from those indicated in the Contract Documents; or (2) physical conditions at the site, of an unusual nature, differing materially from those ordinarily encountered and generally recognized as occurring in work of the character provided for in this Contract but unknown to the Contractor until encountered during prosecution of the Work.  The Engineer shall promptly investigate such condition(s) to determine if the condition(s) constitute a differing site condition as described in sub-clauses (1) or (2) above.  Should the Engineer determine that a differing site condition exists which causes an increase or decrease in the Contractor's cost of,  or  the time required for,  performance of any part of the  Work,  the Engineer shall notify Contractor of same, and within a reasonable time, not to exceed fifteen (15) days, Contractor shall provide a detailed Change Order Proposal in accordance with **ARTICLE 4.04, CHANGE ORDER PROCEDURE AND BASIS FOR PAYMENT**.  The Engineer's determination shall be subject to review by the Contractual Disputes Review Board as set forth below in **ARTICLE 8.03, DISPUTES RESOLUTION PROCEDURE**.

B.    No claim for an extension of time and/or an equitable adjustment by the Contractor due to a differing site condition under this **ARTICLE** shall be allowed unless: (i) the condition giving rise to such claim could not have been discovered during a reasonable site inspection prior to award (whether or not same was actually conducted), and (ii) the Contractor has given the notice required in (a) above and met all requirements in **ARTICLE 2.05, EXTENSION OF TIME**.

C.    The requirements of **ARTICLES 4.04, CHANGE ORDER PROCEDURE AND BASIS FOR PAYMENT** and **4.03, EXTRA WORK DIRECTIVE** concerning equitable adjustments for compensation for Extra Work shall apply to any change under this **ARTICLE** for differing site conditions.  No claim by the Contractor for an equitable adjustment hereunder shall be allowed if asserted after final payment under this Contract.

**ARTICLE 1.07      ASSIGNMENT/CHANGE IN CONTROL**

A.      Contractor may not, by agreement, operation of law, or otherwise, assign, encumber, transfer, convey, sublet or otherwise dispose of this Contract to any entity or person, in whole or in part, including but not limited to an assignment, transfer or conveyance by change in the control or change in the ownership of Contractor or a change in control or change in the ownership of any entity owning or controlling Contractor,  without the prior written consent of the Authority, which consent may be withheld, conditioned or delayed in the Authority's sole discretion (provided that Contractor may assign monies due or to become due to Contractor under the Contract upon prior written notice to Authority and Authority's written acknowledgment). A "change in control" includes, but is not limited to,  any change in the ownership or control of Contractor or any entity owning or controlling Contractor, whether such change results from a merger, or  a sale, assignment or transfer of stock, or a sale of assets, or a sale, transfer or assignment of assets to an affiliate or subsidiary, or a sale, transfer or assignment of assets to an affiliate or subsidiary  with a subsequent sale or transfer of such affiliate or subsidiary, or a transfer or change in control by contract or other such agreement.

B.      Any action by Contractor which violates the provisions of section A, above, shall be deemed to be an Event of Default under **ARTICLE 7.01, EVENT OF DEFAULT** by the Contractor and Authority shall have all rights and remedies available to it under law and equity, including termination of the Agreement.

C.      In the event of the assignment of monies due or to become due under this Agreement, the Authority may require that Contractor provide the Authority with such information, documentation, and authorization as the Authority may deem appropriate.

**ARTICLE 1.08      SUBCONTRACTS**

A.      Any Subcontractor or Supplier which required and received pre-award approval in accordance with **PARAGRAPH 16, BIDDER'S QUALIFICATIONS/RESPONSIBILITY** in the **INFORMATION FOR BIDDERS**, must be utilized by the Contractor for the portion of the Work for which they were approved.  The Authority will generally not entertain any post-award substitutions of any such Subcontractor or Supplier in the absence of compelling circumstances to do so.

B.      To the extent that approval of a Subcontractor or Supplier would be required by the **INFORMATION FOR BIDDERS**, but was not secured prior to Contract Award, then Contractor must obtain Authority approval prior to utilizing any such Subcontractor or Supplier. The Authority shall review requests for approval in accordance with the criteria and requirements set forth in the **INFORMATION FOR BIDDERS**.  If a proposed Subcontractor or Supplier is not approved, the Contractor may propose another Subcontractor or Supplier, or, if it chooses to perform such portion of the Work itself, Contractor should so notify the Engineer.  In addition, the Contractor shall apprise the Engineer of the addition, deletion or substitution of any Subcontractor or Supplier it proposes to make, including pertinent information or reasons(s) therefor.  The Authority reserves the right to disapprove such proposed Subcontractor or Supplier for reasonable cause.

C.   Regarding any Subcontractor or Supplier, whether approved prior to or after the Award Date, or whether approval is required, the Contractor shall fully inform the Subcontractor of all provisions and requirements of this Contract relating either directly or indirectly to the work to be performed and the materials to be furnished under such subcontract agreement or purchase agreement and the agreement shall expressly stipulate that labor performed and/or equipment/materials furnished shall comply with the requirements of the Contract.   The agreement between the Contractor and each Subcontractor/Supplier shall contain terms and conditions that are in accordance with applicable law regarding payments by contractors, and unless proscribed by law, such agreements between Contractor and Subcontractor/Supplier relating to payment and retainage shall be no less favorable to the Subcontractor/Supplier than are those with respect to the Contractor as set forth in this Contract. Approval of any Subcontractor or Supplier by the Authority shall not operate as a waiver of any right against the Contractor or third parties nor shall it relieve the Contractor of any of its obligations to perform the Work as herein set forth.

D.   The Contractor shall obtain certifications and any necessary disclosure forms from all Subcontractors and Suppliers as set forth in the articles entitled **GOVERNMENT-WIDE DEBARMENT AND SUSPENSION (NONPROCUREMENT)**, and **RESTRICTIONS ON LOBBYING in SCHEDULE D, FEDERAL CONTRACT PROVISIONS**, and prior to contract award forward the original to the designated Procurement Representative, Division of Materiel, 2 Broadway, New York, NY 10004.   After contract award the Contractor shall forward the original to the Engineer.   The Contractor shall obtain and retain the certifications as required in accordance to the entitled **RESTRICTIONS ON LOBBYING**, for all of its first tier Subcontractors and Suppliers.

E.   Each of the foregoing provisions shall be applicable to any further subletting of any part of the Work by a subcontractor to another subcontractor and, for the purposes of this Article, upon such further subletting, the subcontractor of the first tier shall be deemed the Contractor.

## ARTICLE 1.09   PRELIMINARY OCCUPANCY

The Authority reserves the right at all times to deliver, place and install furnishings and equipment in the Project as the Work progresses, as long as there is no interference with the Contractor.   Such preliminary occupancy shall in no event be construed as Substantial Completion or Beneficial Use; however, where the Authority is occupying a portion of the Work (which had not been contemplated by the Parties to be co-occupied during the performance of the Work), the Authority will be responsible for damage or loss to such portion of the Work caused by the Authority's preliminary occupancy.

## ARTICLE 1.10   ACCURATE PRICING DATA AND NO FALSE/FRAUDULENT/ MISLEADING SUBMITTALS

A.   General Requirements and Criminal Penalties

1.   All submittals and/or requests by Contractor, on behalf of itself and any Subcontractor or Suppliers, in connection with requests for extension of time, compensation for Extra Work, claims submitted in accordance with **ARTICLE 8.03, DISPUTES**

**RESOLUTION PROCEDURE,** as well as all other documents or submissions related to the Contract, shall be made in good faith and with full, accurate and complete supporting documentation and shall not be misleading, false or fraudulent. The Contractor is advised that the submission of false or fraudulent documentation in connection with claims or requests for extensions of time or for monetary compensation may result in criminal penalties.

2. Any request for an extension of time or monetary compensation, whether for Extra Work or in settlement of a claim, must be submitted with adequate supporting documentation. Any deliberate failure or refusal on the Contractor's part to provide adequate supporting documentation accompanying a submittal shall be deemed to be an act of bad faith on the part of the Contractor. In the event that the Contractor submits a request which the Authority determines to have been misleading, false, fraudulent or submitted in bad faith, then the request shall be rejected in its entirety and any offer or settlement whether proposed or actual shall be rescinded.

3. Any cost or pricing submission by Contractor directly or on behalf of any Subcontractor or Supplier, including claimed profit or overhead fees, shall be complete, accurate and current. In the event that any such entity furnishes costs or pricing data that is not accurate, and thereby increases the cost to the Authority associated with the submission, the price, cost or claim settlement shall be reduced accordingly, and the Contract shall be modified to reflect the reduction.

B. Recovery by Authority of its Costs

Notwithstanding anything to the contrary otherwise contained in **ARTICLE 8.03, DISPUTES RESOLUTION PROCEDURE**, claims by the Authority for violations of this Article shall be adjudicated by a New York State or federal court of competent jurisdiction. In the event of a determination by such court that the Contractor has violated the terms of this provision, the Authority shall be entitled to recover its costs in connection with its review, consideration or response to any such submittal and/or defense of any such claim or dispute. Such costs shall generally be computed in accordance with the Authority's "Schedule of Rates for Services Rendered to Outside Parties" in effect at the time such costs are incurred. Where such Schedule does not cover the type of services in question or its use is otherwise inappropriate in the judgment of the Engineer, the costs shall be computed as directed by the Engineer. Nothing contained in this paragraph shall be deemed to limit or impair any other rights or remedies of the Authority under the Contract.

## ARTICLE 1.11      CONFIDENTIAL INFORMATION, APPROVAL FOR PUBLICATION OF REPORTS AND PRESS RELEASES

A. Confidential Information

1. For purposes of this Article, the term "Contractor" shall be deemed to include its principals, members, directors, officers and employees, and shall also be deemed to include its Subcontractors, Suppliers, consultants and agents, as well as their principals,

members, directors, officers, employees, agents and consultants. The Contractor and the above-mentioned individuals or entities shall keep confidential all information furnished to it (them) by the Authority or otherwise learned or derived by it (them) about or in connection with this Project, any other MTA/Authority project or contract or MTA/Authority policies, procedures, operations, or infrastructure ("Confidential Information"). Confidential Information includes, but is not limited to, specifications, drawings, plans, diagrams, sketches, renderings and other technical data and information, as well as all designs, maps, surveys, design calculations, shop drawings, charts, photographs (including "progress photographs") and CADD materials and media. Confidential Information pertaining to this Project may only be utilized in connection with such Project and by individuals who, in fact, have a "need to know" the contents of such Confidential Information, and must be appropriately safeguarded by the Contractor from disclosure to anyone who is not so authorized by the Authority to have access thereto.

2.      Neither the Contractor nor any of the above-mentioned individuals or entities may sell, transfer, disclose, display or otherwise make available to anyone any part of such Confidential Information without the prior written consent of the Authority.

3.      The Contractor and the above-mentioned individuals or entities shall not and hereby represent and warrant that it/they will not (nor will it/they through an agent or third party), unless agreed to in writing by the Authority: (i) send, ship, mail, deliver, email or otherwise transmit in or by any fashion whatsoever (whether manually, by machine, by facsimile or other electronic or digital technology or by other technology or method), or (ii) enter into or issue an agreement, subcontract or other instrument to send, ship, mail, deliver, email or otherwise transmit in or by any fashion whatsoever (whether manually, by machine, by facsimile or other electronic or digital technology or by other technology or method), any such Confidential Information in any form or by any means (and if in electronic form, for any such Confidential Information to be transmitted to or reside in a computer or electronic device located) outside of the United States.

4.      The Contractor shall advise each of its employees, agents, consultants, Subcontractors and Suppliers who may be exposed to such Confidential Information of their obligation to maintain the confidentiality thereof. In addition, the Contractor agrees to cooperate fully and provide any assistance necessary to ensure the confidentiality of the Confidential Information.

5.      At any time during the term of this Contract, the Contractor shall forthwith deliver to the Authority any and all media containing any Confidential Information as the Authority shall request. The special confidentiality obligations as set forth in this Article shall continue until specifically released by the Authority in writing, except where release thereof has been finally ordered by a court of competent jurisdiction.

6.      The Contractor and the above-mentioned individuals or entities hereby represent and warrant that at the conclusion of the Project or upon its termination, any Confidential Information that is to be retained by it/them for archival/audit/legal purposes shall be

certified as such and shall be maintained in a secure facility, and that it/they shall maintain care, custody and control over any and all media containing any Confidential Information while in such secure facility and until any and all media containing the Confidential Information are either returned to the Authority or destroyed as provided in paragraph 7., below.

7.      Except as provided in paragraph 6, above, at the conclusion of the Project or upon its termination, unless otherwise instructed in writing by the Authority, the Contractor and the above-mentioned individuals or entities shall destroy its/their copies of any and all media containing all Confidential Information such that recognition or reconstruction of the Confidential Information is precluded.  Unless otherwise permitted by the Authority, cross-cut shredding of hardcopy items, physical destruction of diskettes, floppies, CDs, DVDs, and any other recordable media, deleting of electronic items by permanent deletion or non-retrievable/irreversible placement in delete-overwrite status are the Authority's required methods of such destruction with respect to documents or materials containing Confidential Information which the Authority has instructed are to be destroyed.

8.      In the event the Contractor or any of the above-mentioned individuals or entities learns or believes that Confidential Information has been released or believes that Confidential Information is about to be released, the Authority shall be notified immediately.

B.      Approval for Publication of Reports

The Contractor and the above-mentioned individuals or entities shall neither publish nor circulate in any form or media any Confidential Information or any reports, studies, analyses, recommendations, or any other materials of whatsoever nature prepared by the Contractor or any of the above-mentioned individuals or entities, without first obtaining the written approval of the Authority.

C.      Press Releases

To the fullest extent permitted by law, the Contractor and the above-mentioned individuals or entities agree(s) that it/they will not issue any news release to the public press or any publication wholly or partly related to its/their work under this Contract without first obtaining the written approval of the Authority.  The Contractor and the above-mentioned individuals or entities further agree(s) that it/they will not make speeches, engage in public appearances, publish articles or otherwise publicize its work under this Contract without the prior written approval of the Authority.

D.      Violations of this Article

Breach of any of the foregoing provisions may be deemed by the Authority to be a material breach of the Contract.  It is understood and agreed that in the event of any such breach by the Contractor of these provisions, damages may not be an adequate remedy and the Authority shall be entitled to injunctive relief to restrain any such breach or threatened breach.

E.      Requirements Pertaining to Security-Sensitive Information

If so indicated in the Contract Documents that this Contract contains Authority or MTA security-sensitive information, the Contractor understands and agrees that nothing contained in this Article shall be deemed to supersede any inconsistent requirements or provisions contained elsewhere in the Contract Documents pertaining to such Authority or MTA security-sensitive information.  In the event of a conflict between provisions or requirements contained in this Article and those elsewhere in the Contract Documents pertaining to such Authority or MTA security-sensitive information, the more stringent provision or requirement shall be deemed to apply.

## CHAPTER 2 - PROVISIONS RELATING TO TIME

**ARTICLE 2.01       TIME FOR COMMENCEMENT AND COMPLETION OF WORK**

The Contractor shall begin the Work within ten (10) days after the date of the Notice of Award, and shall thenceforth prosecute the Work continuously and diligently.  The Contractor shall within

**(See INFORMATION FOR BIDDERS DATA SHEET)**

from the date of the Notice of Award substantially complete the Work as set forth below.  The conclusion of this period of time, as it may be extended hereunder, shall be the "Substantial Completion Date."

**ARTICLE 2.02       SUBSTANTIAL COMPLETION AND FINAL COMPLETION**

A.    Substantial Completion shall be declared by the Engineer upon his determination that all Work, except for Remaining Work, as defined in **ARTICLE 1.02, DEFINITIONS,** is complete and fit for its intended purpose. Among the items upon which the issuance of a Certificate of Substantial Completion is contingent include but are not limited to: (i) the testing and approval by the Engineer of all operating systems, including but not limited to mechanical and electrical systems and their component parts; (ii) the submission of all final operation and maintenance manuals approved by the Engineer; (iii) submission of final as-built drawings for the work approved by the Engineer; (iv) submission of all other remaining deliverables approved by the Engineer, unless expressly not required to be approved prior to Substantial Completion; and (v) completion of all required training of Authority personnel and submission of all required training materials.

B.    When the Contractor is of the opinion that the Work is Substantially Complete, Contractor may submit to the Engineer a written request that the Engineer inspects the Work so as to determine whether Substantial Completion has been achieved.  Upon such request, the Authority must respond within twenty-five (25) days of its receipt with either (i) a Certificate of Substantial Completion or (ii) an explanation of the reasons why the Work is not Substantially Complete, including a list of open items necessary to achieve Substantial Completion.  The issuance of this Certificate shall not relieve the Contractor from its obligation hereunder to complete the work. Nothing in this **ARTICLE** precludes the Engineer from making a determination of Substantial Completion in the absence of a request therefor by the Contractor.

In the event any portion of the Work is set forth in the **SPECIAL CONDITIONS,** as subject to a Beneficial Use certification, then the procedure set forth above for issuance of a Certificate of Substantial Completion shall be used, i.e., the Engineer shall respond to such request within twenty-five (25) days of its receipt with either (i) a "Beneficial Use Certification" identifying the applicable portions of the Work so certified and a punch list, or (ii) an explanation of the reasons why the Beneficial Use Certification cannot be issued, including a list of open items necessary to achieve Beneficial Use.

C.    The work remaining after Substantial Completion to complete the Work shall be known as the "Remaining Work."   The Remaining Work shall be limited to "Punch List Work," except the

Engineer may, in his sole discretion, include the following types of work as part of Remaining Work: (i) street restoration and permanent pavement work which cannot be done because of seasonal factors such as cold weather (provided sufficient temporary pavement is complete); (ii) work which cannot be done until the Authority or third persons perform other work which is not the Contractor's responsibility under the Contract; and (iii) work necessary to correct any omission or defect attributable to the Contractor whether or not discovered or disclosed after Substantial Completion has been declared. The Engineer shall issue a Remaining Work list within ten (10) days of the issuance of the Certificate of Substantial Completion.

D.      Contractor shall submit a schedule for the completion of the Remaining Work to the Engineer within ten (10) days of receipt of the Remaining Work list. The Engineer shall advise the Contractor whether the schedule has been accepted or requires certain modifications. The time set by the Engineer to complete Punch List Work shall be no more than ninety (90) days from the issuance of the Certificate of Substantial Completion. When in the opinion of the Engineer the Remaining Work is properly complete, the Engineer shall issue a Final Completion Certificate.

In the event of an emergency or that Contractor fails to diligently prosecute the Remaining Work or Punch List Work in connection with Substantial Completion or Beneficial Use, the Authority may complete such Remaining Work or Punch List Work, either by its own forces or by other contractors and deduct the Authority's costs thereof from the Final Payment. If such costs exceed the amount available from the Final Payment, the Contractor shall immediately upon demand pay such excess to the Authority.

E.      Upon Substantial Completion, the Contractor shall remove its tools, materials and equipment from the Work Site, except for the tools, materials and equipment needed to complete the Remaining Work, or unless otherwise authorized in writing by the Engineer.

## ARTICLE 2.03      CONTRACTOR'S DETAILED SCHEDULE OF WORK

A.      The Contractor shall schedule the Project in accordance with the technical requirements set forth in the applicable section of the Specifications (See **INFORMATION FOR BIDDERS DATA SHEET**). The Contractor shall have broad discretion in scheduling the Project. The Authority's basis for its rejection of any Schedule Document, including any changes in critical path method logic, durations, staffing, quantities or costs submitted pursuant to paragraph (c) of this **ARTICLE**, shall generally be limited to a determination that the Schedule Document lacks logic, is unreasonable, is incomplete, may create unsafe working conditions, or is inconsistent with any other contractual requirement, such as a phasing plan, or with available Authority services (as described in the relevant provisions of the Specifications).

B.      With respect to any submission by the Contractor under this **ARTICLE**, no review or acceptance by the Engineer shall release or relieve the Contractor from its obligation to fully and properly complete the Work, or any other duty, responsibility or liability imposed on it under this Contract, including, but not limited to the obligation to complete the Work within the time set forth in **ARTICLE 2.01, TIME FOR COMMENCEMENT AND COMPLETION OF WORK**.

Review and acceptance by the Engineer of Contractor's project schedule and updates is for conformance to the requirements of the Contract only, and does not relieve the Contractor of any of its responsibility whatsoever for the accuracy or feasibility of the project schedule, or of the Contractor's ability to meet the Substantial Completion date, nor does such review and acceptance expressly or impliedly warrant, acknowledge or admit the reasonableness of the logic, durations, staffing, costs or equipment loading of the Contractor's project schedule and updates, nor may it be deemed to constitute notice to the Authority as required by law or by **ARTICLE 1.03, NOTICES**.

C.    Contractor shall submit to the Engineer for review and acceptance any changes in critical path method logic, staffing quantities, costs and/or durations in accordance with the applicable section of the specifications setting forth the scheduling requirements.

D.    Neither the inclusion of changes into a Schedule Document (whether to the initial or base-line schedule or any updates thereto) by the Contractor nor the acceptance or acquiescence in, by the Engineer thereof, shall be construed as constituting extensions of time to the Contract duration as set forth in **ARTICLE 2.01, TIME FOR COMMENCEMENT AND COMPLETION OF WORK**. Such changes are deemed to be for the purpose of keeping the schedule up-to-date in order to reflect the work to be accomplished and to include the best time estimate for work yet to be completed.

E.    The Schedule Document must be submitted to the Engineer in proper form and in a timely manner, as required by this **ARTICLE** and the applicable section of the **SPECIFICATIONS**. Receipt by the Engineer of the required Schedule Document in conformance with all contractual requirements shall be a condition precedent to the Contractor's entitlement to any payment, which may otherwise be due.

F.    In the event that the Contractor submits, and the Engineer accepts, a Schedule Document calling for a shorter Substantial Completion of the Project, or shorter intermediate milestones (in the case where the Contract Documents so provide), than that set forth in **ARTICLE 2.01, TIME FOR COMMENCEMENT AND COMPLETION OF WORK**, the accepted shorter Substantial Completion or intermediate milestone date(s) shall be utilized in the Project schedule, however, it will not affect the contractual Substantial Completion date(s) stated thereunder.

The time period between the shorter Substantial Completion or milestone date(s) and the contractual Substantial Completion or milestone date(s) shall be considered project float available to offset delays by either party. The entitlement to Impact Costs or the assessment of Liquidated Damages shall continue to be measured by the contractual Substantial Completion or milestone date(s).

G.    In the event that an updated Schedule Document is not timely submitted by the Contractor or is determined by the Engineer to be grossly inadequate, the Authority may, in its discretion and for its own internal use, update the Schedule Document with its own forces or through a consultant/contractor and charge the Contractor the costs thereof, provided, however, that this shall not relieve the Contractor of its obligation to submit such updated Schedule Document.

**ARTICLE 2.04      AUTHORITY DAMAGES IN CASE OF DELAY**

A.      Time is of the essence of this Contract.  The Contractor is firmly obligated and guarantees to meet the stipulated completion date(s).  In the event of a delay in Substantial Completion beyond the Substantial Completion Date, as such time may be extended by the Authority as hereinafter provided in this Chapter, the Authority shall be paid damages for such delay.  Inasmuch as the amount of such damages and the loss to the Authority will be extremely difficult to ascertain, it is hereby expressly agreed that such damages will be liquidated and paid as follows:

The Contractor shall pay to the Authority for each and every day of the aforementioned delay, except Sundays and legal holidays, the sum of:

**(See INFORMATION FOR BIDDERS DATA SHEET)**

which sum is hereby agreed upon not as a penalty but as liquidated damages.

B.      The Authority shall have the right to deduct liquidated damages assessments from any monies due or which may thereafter become due to the Contractor under this Contract; and in case the amount which may become due hereunder shall be less than the amount of liquidated damages due to the Authority, the Contractor shall pay the difference upon demand by the Authority.

**ARTICLE 2.05      EXTENSION OF TIME**

A.      In the event that the Contractor is actually and necessarily delayed in the progress of the Work to the extent that the delay will extend the Substantial Completion Date as a result of: (i) the act, neglect or failure of the Authority, another Authority Contractor, a utility or governmental entity (which act, neglect or failure occurs for reasons outside of the Contractor's control); or (ii) a Differing Site Condition within the meaning of **ARTICLE 1.06, DIFFERING SITE CONDITIONS**; or (iii) a force majeure, the Authority will extend the Substantial Completion Date (or intermediate milestone date in the case where provided for in the Contract Documents) provided that the following conditions are met:

1.      the cause of the delay arises after the Contractor's receipt of the Notice of Award and neither was nor could have been anticipated by the Contractor before such Notice is received;

2.      the delay is affecting an item(s) on the critical path as indicated in a current updated Schedule Document;

3.      the effect of such cause of delay cannot be avoided or mitigated by the exercise of all reasonable precautions, efforts and measures, including changes to the sequencing of the Work, whether before or after the occurrence of the cause of delay; and

4.      the Contractor makes a written request and provides other information to the Authority as described in this **ARTICLE**.

A delay meeting all the conditions of this paragraph (a) shall be deemed an "Excusable Delay." Any other delay shall be deemed a non-excusable delay. A "Concurrent Delay" shall be the period of delay during which an Excusable Delay overlaps with a non-excusable delay. Notwithstanding any provision of **ARTICLE 2.07, CONTRACTOR'S DAMAGES FOR DELAY** to the contrary, during (i) a Concurrent Delay, or (ii) an Excusable Delay which arose because of the action or lack thereof of another Authority Contractor or of a utility or governmental entity for reasons outside of the Contractor's control, then while Contractor shall be entitled to an extension of time, it shall not be entitled to seek Impact Costs associated with such Concurrent or Excusable Delay.

B.  In regard to an injunction, strike or interference of public authority which may delay the Project, the Contractor shall promptly give the Authority a copy of the injunction or other orders and copies of the papers upon which the same shall have been granted. The Authority shall be accorded the right to intervene or become a party to any suit or proceeding in which any such injunction shall be obtained and to move to dissolve the same or otherwise, as the Authority may deem proper.

C.  Any reference in this Article to the Contractor shall be deemed to include materialmen, suppliers and permitted subcontractors, whether or not in privity of contract with the Contractor. The provisions of this **ARTICLE** shall be included in all material, supply and subcontractor agreements entered into by the Contractor.

D.  The Authority reserves the right to rescind or shorten any extension previously granted, if subsequently, the Authority determines that any information provided by Contractor in support of a request for an extension of time was erroneous; provided however, that such information or facts, if known, would have resulted in a denial of the request for an Excusable Delay. Notwithstanding the above, the Authority will not rescind or shorten any extension previously granted if the Contractor acted in reliance upon the granting of such extension and such extension was based on information which, although later found to have been erroneous, was submitted in good faith by the Contractor.

E.  The request required under paragraph (a) above, shall be made within ten (10) days after the time when Contractor knows or should have known any cause for which it may claim an extension of time and shall provide any actual or potential basis for an extension of time, identifying such cause and describing, to the satisfaction of the Engineer, the nature and expected duration of the delay and its effect on the completion of that part of the Work identified in the request. The Contractor shall furnish such additional information or documentation as the Authority shall reasonably deem necessary or helpful in considering the requested extension within fifteen (15) days, unless otherwise agreed to in writing by the Authority. The Contractor must also comply with requirements set forth in the Specifications regarding Contractor's Schedule Document.

Contractor shall not be entitled to an extension of time unless the Contractor affirmatively demonstrates to the satisfaction of the Authority, that it is entitled to such extension.

F.   Within thirty (30) days of its receipt of all such information and documentation (or within thirty (30) days of Contractor's filing of the original request in the event the Authority requires no such additional material) the Authority shall advise the Contractor of its decision on such requested extension; except that, where it is not reasonably practicable for the Authority to render such decision in the thirty (30) day period, it shall, prior to the expiration of such period, advise the Contractor that it will require additional time and the approximate date upon which it expects to render such decision.

G.   Neither the permitting of the Contractor to proceed with the Project subsequent to the date specified in **ARTICLE 2.01, TIME FOR COMMENCEMENT AND COMPLETION OF WORK** (as such date may have been extended pursuant to this **ARTICLE**), the making of any payments to the Contractor, nor the issuance of any Change Order, shall operate as a waiver on the part of the Authority of any rights under this Contract, including but not limited to the assessment of liquidated damages or declaring Contractor in default.

H.   In the event of an Excusable Delay to the Substantial Completion Date, the Authority reserves the right, at any time, to direct the Contractor to accelerate the performance of the Work so as to eliminate or reduce the projected delay.  Any revision to the projected completion date that may result from such an acceleration directive shall become the new Substantial Completion Date.

The Contractor shall be compensated for additional costs incurred as a result of acceleration in accordance with the terms of **ARTICLES 4.03, EXTRA WORK, CHANGE ORDER PROCEDURE AND BASIS FOR PAYMENT** and **4.05, EXTRA WORK DIRECTIVE**.  In no event shall the Contractor be entitled to any additional compensation, beyond that provided for in the aforesaid articles, for any acceleration efforts.

Nothing in this paragraph shall be construed to modify the Contractor's obligation to mitigate delay pursuant to **PARAGRAPH A** of this **ARTICLE**, or otherwise create a basis for compensation for reasonable mitigation efforts.

## ARTICLE 2.06      EXTENSION OF TIME NOT CUMULATIVE

In case the Contractor shall be delayed at any time or for any period by two or more of the causes above-mentioned in **ARTICLE 2.05, EXTENSION OF TIME,** the Contractor shall not be entitled to a separate extension for each one of the causes but only one period of extension shall be granted for the delay.

## ARTICLE 2.07      CONTRACTOR'S DAMAGES FOR DELAY

A.   Except as otherwise specifically provided for in this **ARTICLE,** the Contractor agrees to make no claim for compensation or damages for delay of any kind in the performance of this Contract on behalf of itself, Subcontractors or Suppliers whether occasioned by any act or omission of the Contracting Party or the Authority or any of their representatives (whether it is an Excusable Delay within the meaning of **ARTICLE 2.05, EXTENSION OF TIME** or otherwise) and Contractor agrees that any such claim shall be compensated for solely by an extension of time to complete performance of the Work as provided therein.  In this regard, the Contractor alone

hereby specifically assumes the risk of such delays, including without limitation: delays in processing or approving shop drawings, samples or other submittals; or the failure to render determinations, approvals, replies, inspections or tests of the Work, in a timely manner. Notwithstanding any provision of subparagraph (b) below, Contractor shall not be entitled to compensation or damages for delay of any kind relating to the delay of an intermediate milestone date (if such date(s) are provided for in the Contract Documents).

B.    In the event of an Excusable Delay associated with the Authority's failure to provide access to the Work Site, issuance of a Change Order, or issuance of a Stop Work Order pursuant to **ARTICLE 2.08, STOP WORK ORDER**, and as a result of any of the foregoing, the Contractor demonstrates that it will be actually and necessarily delayed in meeting the scheduled Substantial Completion Date, the Contractor shall be entitled to Impact Costs, to the extent, if any, hereinafter set forth. However, the parties acknowledge that any failure or delay (whether with respect to the number, duration, timing, availability or other aspect of Authority-provided services) by the Authority in providing a service such as, but not limited to, access and protection personnel, flagging staff, inspectors, diversions or work trains shall not constitute a failure to provide access to the Work Site and therefore is not subject to an assessment of Impact Costs.

C.    Impact Costs shall only be allowed for periods of the above-mentioned types of Excusable Delays which are not concurrent with any other non-Excusable Delays, or other Excusable Delays which do not give rise to Impact Costs, and which are actually, reasonably and necessarily incurred and verifiable by appropriate documentation. Contractors claiming impact costs for delays affecting a Subcontractor shall provide proof of a pre-existing liability to that Subcontractor for the costs claimed.

D.    Impact Costs shall include only the following:

1.    Increased wages attributable to work being performed by trades in a higher wage period.

2.    Increased field office expenses.

3.    Increased cost to purchase materials.

4.    Increased cost to store materials, to the extent that the Contractor can demonstrate that such storage is specific to this Project.

5.    Cost incurred to keep the Work Site open, such as temporary power and sanitary facilities.

6.    Extended insurance and bonding.

7.    With respect to rented equipment, the lesser of the actual rental cost or the reasonable rental value (as reflected in the latest edition of the "Rental Rate Blue Book" published by K-III Directory Corp.) for idled equipment on the Work Site. With respect to owned heavy construction equipment, the additional cost of maintaining the equipment consistent with (and in an amount not to exceed) the price schedule set forth in the latest

edition of the "Contractor's Equipment Cost Guide" as published by Dataquest/Dun & Bradstreet.

E.     In no event will the Authority be required to pay Impact Costs, nor is the Authority liable under this Contract for sums, which are in the nature of consequential damages, decreased productivity or efficiency, profits or indirect costs (such as Contractor's home office overhead and general and administrative expenses including claims preparation).  Acceptance by the Contractor of any payments made by the Authority in connection with this Article shall serve as a release to the Authority and Contracting Party from all claims and liability to the Contractor arising out of such delay.

F.     The Contractor shall have no right to rescind or terminate this Contract, and Contractor shall have no cause of action under any theory of quasi-contract or quantum meruit by reason of any delay, obstruction, or interference of any kind or duration whatsoever, and whether or not compensable hereunder.

## ARTICLE 2.08     STOP WORK ORDER

A.     The Authority may, at any time, by written order to the Contractor, require the Contractor to stop all, or any part, of the Work for a period of ninety (90) days (or any lesser period), commencing no sooner than the date the order is delivered to the Contractor, and for any further period to which the parties may agree.  Any such order shall be specifically identified as a "Stop Work Order" issued pursuant to this Article.  Within the period of ninety (90) days (or the lesser period specified) after a Stop Work Order is delivered to the Contractor, or within any extension of that period to which the parties shall have agreed, the Authority shall:

1.     cancel the Stop Work Order, or

2.     terminate the Contract as provided in **ARTICLES 2.09, TERMINATION FOR CONVENIENCE BY THE AUTHORITY** or **2.10, TERMINATION FOR CONVENIENCE – INTEGRITY MATTERS**, or

3.     delete the Work covered by such Stop Work Order as provided in **ARTICLE 4.06, DELETED WORK.**

B.     If a Stop Work Order issued under this **ARTICLE** is cancelled or the period of the order or any extension thereof expires, the Contractor shall resume work without compensation to the Contractor for such suspension other than:

1.     extending the time for the Contract Completion Date to the extent that, in the opinion of the Engineer, the Contractor may have been delayed by such suspension; and

2.     Impact Costs as described in **ARTICLE 2.07, CONTRACTOR'S DAMAGES FOR DELAY**;

except that in the event the Engineer determines that the suspension of work was necessary due to Contractor's defective or incorrect work, unsafe work conditions caused by the Contractor or any other reason caused by Contractor's fault or omission, the Contractor shall be entitled to neither compensation nor an extension of time of any nature as a result of the issuance of this Stop Work Order.

## ARTICLE 2.09 TERMINATION FOR CONVENIENCE BY THE AUTHORITY

In addition to cancellation or termination as otherwise provided in the Contract Documents, the Authority (as agent for the Contracting Party) may at any time, in its sole discretion, with or without cause, terminate this Contract by written notice to the Contractor and in such event:

A.    The Contractor shall, upon receipt of such notice, unless otherwise directed by the Authority:

    1.    stop work on the date specified in the notice ("the Effective Date");

    2.    take such action as may be necessary for the protection and preservation of the Authority's materials and property;

    3.    cancel all cancelable orders for material and equipment;

    4.    assign to the Authority and deliver to the site or any other location designated by the Engineer any non-cancelable orders for material and equipment that is not capable of use except in the performance of this Contract and has been specifically fabricated for the sole purpose of this Contract and not incorporated in the Work;

    5.    take no action which will increase the amounts payable by the Authority under this Contract; and

    6.    take reasonable measure to mitigate the Authority's liability under this **ARTICLE**.

B.    In the event that the Authority exercises its right to terminate the Contract pursuant to this **ARTICLE**, the Authority will pay the Contractor:

    1.    its actual cost or the fair and reasonable value, whichever is less, of (i) the portion of the Work completed in accordance with the Contract up to the Effective Date, and (ii) non-cancelable material and equipment that is not capable of use except in the performance of this Contract and has been specifically fabricated for the sole purpose of this Contract but not incorporated in the Work; and

    2.    ten percent (10%) of the difference between the Total Contract Price and the aggregate of all payments made apart from those due pursuant to subparagraph B.1. above.

C.    The fair and reasonable value shall be based upon Total Contract Price.  In no event shall any payments under this **ARTICLE** exceed the contract price of such items.

D.     The amount due hereunder shall be offset by all payments made to the Contractor.

E.     All payments pursuant to this **ARTICLE** shall be accepted by the Contractor in full satisfaction of all claims against the Contracting Party and the Authority arising out of the termination including, without limitation, lost profits, overhead or other consequential damages. Further, the Authority may deduct or set off against any sums due and payable pursuant to this Article any claims it may have against the Contractor.  All payments pursuant to this **ARTICLE** are subject to audit.

**ARTICLE 2.10     TERMINATION FOR CONVENIENCE - INTEGRITY MATTERS**

The Authority at its discretion may terminate the Contract for convenience based on integrity matters if, during the Contract term: (i) the Contractor, a Contractor director, officer, principal, or managerial employees or owner of a ten percent (10%) or more interest in the Contractor, is convicted of a crime involving a public contract; or (ii) significant concerns about the Contractor's integrity are raised based upon an evaluation of the events underlying any other determination, or an indictment or other allegation, that the Contractor or a Contractor's director, officer, principal, or managerial employee, or owner of a ten percent (10%) or more interest in the Contractor, is involved in a criminal or other unlawful activity.     In such event, the procedures set forth in Paragraph A of **ARTICLE 2.09, TERMINATION FOR CONVENIENCE BY THE AUTHORITY**, above, shall apply, and the Contractor shall be entitled to the payment set forth in Paragraph B.1 of such **ARTICLE 2.09**, but the Contractor shall not be entitled to any payment as set forth in Paragraph B.2. of such **ARTICLE 2.09**.

## CHAPTER 3 - PRICE AND PAYMENTS

### ARTICLE 3.01     PRICE TO INCLUDE

The Authority shall pay and the Contractor shall accept the amounts set forth in the Price Schedule of the Bid as full compensation for all costs and expenses of completing the Work in accordance with the Contract, including, but not limited to, all labor and material required to be done or furnished under this Contract; all overhead, expenses, fees and profits including the cost of providing storage yard or facilities; all risks and obligations set forth in the Contract; any applicable fees or taxes; and all expenses due to any unforeseen difficulty encountered in the prosecution of the Work, except as otherwise expressly set forth above in **ARTICLE 1.06, DIFFERING SITE CONDITIONS.**

### ARTICLE 3.02     VARIABLE QUANTITIES CLAUSE

With respect to any unit price item as to which an estimated quantity is set forth in the Bid, such unit price shall apply regardless of the actual quantity of such item ultimately utilized in, or required by, the Work; except that, if the actual quantity for a unit price item differs from the estimated quantity in the Price Schedule by more than ten percent (10%), then the Engineer shall review whether application of the Unit Price would cause a substantial inequity to either party, and, if so, the Unit Price for such item will be equitably adjusted, upward or downward, as determined by the Engineer.

### ARTICLE 3.03     DETAILED COST BREAKDOWN FOR LUMP SUM ITEMS

Not later than thirty (30) days from the Notice of Award, the Contractor shall submit to the Engineer, for approval, quintuplicate copies of a detailed cost breakdown of all items of work, labor and materials included in the following lump sum Items:

### (See INFORMATION FOR BIDDERS DATA SHEET)

The cost breakdown for each lump sum Item ("DCB Price") shall include its proportionate share of overhead, profit, premium on bond, insurance and all other expenses involved.  The quantities and unit prices shall be extended to show the total amount for each item of work and the sum of these amounts shall total in each case the exact amount of the lump sum price(s) for the Item.  The following non-construction items and associated cost are to be identified as separate line items in the detailed cost breakdown: CPM Schedule Documents and updates, operation and maintenance manuals, testing, training, as-built drawings and microfilm.  The DCB Prices shall be in proper balance and shall be subject to approval by the Engineer.  The Contractor shall revise the detailed estimate, if necessary, to make it consistent with the approved CPM or Bar Chart, as applicable.

### ARTICLE 3.04     PROMPT PAYMENT

A.     All payments will be made pursuant to Section 2880 of the Public Authorities Law (the "Prompt Payment Law") and the MTA's implementing rules, officially called the Statement of Rules and Regulations With Respect To Prompt Payment (the "Prompt Payment Statement").  Any terms used in this chapter which are not defined herein, shall have the meanings ascribed in the Prompt

Payment Statement. The Prompt Payment Statement is codified in Volume 21 of the New York Code of Rules and Regulations, Part 1002.

B.    In accordance with the Prompt Payment Statement, all payments will be made within thirty (30) days, excluding legal holidays, of the Receipt of Invoice, as defined for Progress Payments, Payment on Substantial Completion, and Final Payment, in **ARTICLES 3.05, PROGRESS PAYMENTS; 3.06, PAYMENT UPON SUBSTANTIAL COMPLETION;** and **3.07, PROVISIONS RELATING TO FINAL PAYMENT**, respectively, subject to the paragraphs below.

C.    The Authority reserves the right to conduct an inspection or audit of any Preliminary Estimate, the Substantial Completion Payment Estimate and the Final Payment Estimate to verify that the amount to be paid is in accordance with the provisions of the Contract. The applicable "Receipt of Invoice" date under **ARTICLES 3.05, PROGRESS PAYMENTS; 3.06, PAYMENT UPON SUBSTANTIAL COMPLETION;** and **3.07, PROVISIONS RELATING TO FINAL PAYMENT**, will be deemed extended ten (10) business days in the event the Authority elects to perform this function.

D.    Notwithstanding anything to the contrary in the Contract, the thirty (30) day payment period in paragraph (b) above will be tolled as set forth below, whenever the audit or inspection reveals a defect in delivered materials or services, or suspected improprieties of any kind, which might include, but is not limited to, a determination by the Engineer that the Contractor is in breach of a material term of this Contract. In any such case, the date of "Receipt of Invoice" date shall be tolled to the date that acceptable goods or services are delivered or provided, or the date that the impropriety is resolved.

E.    Interest for late payments hereunder shall be payable in accordance with the Prompt Payment Statement.

F.    The Designated Payment Office shall mean the office of the Engineer as described in the Notice of Award which may be changed at any time by the Authority upon notification in writing to the Contractor.

## ARTICLE 3.05      PROGRESS PAYMENTS

A.    Progress Payments will be made periodically for the value of the work performed and for materials not incorporated into the Work in accordance with paragraph (c) of this Article. For a Progress Payment, the Receipt of Invoice shall mean the later of the dates that (i) the Preliminary Estimate is issued or (ii) the Supporting Documentation is received at the Designated Payment Office, as described respectively in paragraphs B and D below.

B.    The following will constitute the procedure for the issuance of a Preliminary Estimate:

1.    At the Contractor's request, but not more often than once a month, the Engineer and the Contractor shall perform a joint inspection of the Work and/or materials not incorporated into the Work. Upon completion of the joint inspection, the Engineer shall prepare the

Preliminary Estimate based upon the Engineer's determination of the reasonable value of (i) the work performed, including materials incorporated in the Work and (ii) materials meeting the requirements set forth in paragraph (c) below, which have not been included in any other Preliminary Estimate. The Engineer's determination shall be based upon the prices set forth in the Bid, or the detailed cost breakdown, as applicable. Where a detailed cost breakdown is required, the Preliminary Estimate shall not include any amount for work covered by a detailed cost breakdown which has not been approved by the Engineer. Notwithstanding the foregoing, a Preliminary Estimate will not be issued unless the total value is at least equal to $10,000.

2. The Contractor shall sign the Preliminary Estimate upon acknowledging thereon the items with which it agrees and which it disputes (including items omitted). The date the Contractor delivers to the Engineer such Preliminary Estimate (the "Preliminary Estimate Delivery Date"), shall be the date the Preliminary Estimate is issued for the amount agreed between the Engineer and the Contractor thereunder.

3. The amount in the Preliminary Estimate in dispute is subject to the disputes resolution provisions in **ARTICLE 8.03, DISPUTES RESOLUTION PROCEDURE**. The Preliminary Estimate Delivery Date shall also be deemed to be the date of the Engineer's determination for purposes of that **ARTICLE**. If the Contractor prevails with respect to any disputed amount, then the Preliminary Estimate shall be deemed issued for such amount retroactive to the Preliminary Estimate Delivery Date.

C. The reasonable value or cost, whichever is less, of materials not yet incorporated in the Work, which are on the Work Site or off the Work Site, shall be included in a Preliminary Estimate, provided the conditions precedent set forth below are met. If such materials are stored off the Work Site, the Contractor agrees to pay any additional costs incurred by the Authority in connection with any inspection of such materials.

1. The Engineer determines that such materials appear to meet the requirements of the Specifications and are suitably stored and secured.

2. The Contractor submits to the Engineer (i) proof satisfactory to the Authority that Contractor has free and clear title to such materials, and (ii) the Contractor's representation that all such materials shall remain free and clear of and from all debts, claims, liens, mortgages, taxes and encumbrances.

3. If any such material is off the Work Site, the Authority may also require a lease of or license to use the real property where such materials are stored. Such lease shall be without cost to the Authority in form and substance satisfactory to the General Counsel to the Authority.

4. If any such materials are stored outside the City, the Contractor agrees to accept responsibility for and to pay all sales, compensation, use, personal and property taxes that may be levied against the Authority by any state or subdivision thereof on account of such material.

5.      The Contractor, at its expense, shall transfer title to any such materials to be included in a Preliminary Estimate free and clear of and from all debts, claims, liens, mortgages, taxes and encumbrances by conveyance in form and substance satisfactory to the General Counsel to the Authority.

6.      For any materials included in a Preliminary Estimate which may subsequently become lost, damaged or unsatisfactory, the amount thereof as allowed by the Engineer shall be deducted from succeeding payments to the Contractor.

D.      Supporting Documentation: The required supporting documentation for Progress Payments under this Contract, set forth below, shall be a condition precedent to the issuance of the payment to the related Preliminary Estimate.

1.      Contractor's affidavit certifying that its Subcontractors and Suppliers have been paid the amount due to them for the work performed and materials furnished by each of them which were encompassed by any previous progress payments made to the Contractor.

2.      Contractor's certification of compliance with the minimum wage rates and other provisions and stipulations in accordance with applicable law, where required.

3.      Where this Contract calls for submittal and use of Schedule Documents, the Contractor's certification endorsed by the Engineer that it is in compliance with any provisions thereof which are listed as conditions precedent to payment.

4.      Where this Contract requires reporting on progress toward fulfillment of DBE goal(s), the Contractor's certification that it is in compliance with any provisions thereof listed as conditions precedent to payment.

5.      Any submission specified in paragraph (c) above with respect to materials not yet incorporated into the Work.

6.      Any other document specified in the Contract as a condition precedent for purposes of Progress Payments.

## ARTICLE 3.06      PAYMENT UPON SUBSTANTIAL COMPLETION

A.      The "Receipt of Invoice" for the Payment on Substantial Completion shall mean the later of the date (i) the Substantial Completion Payment Estimate is issued, or (ii) the Supporting Documentation is received at the Designated Payment Office, as described respectively in paragraphs (b) and (c) below.

B.      The Engineer shall, concurrently with the issuance of the Certificate of Substantial Completion, as provided in **ARTICLE 2.02, SUBSTANTIAL COMPLETION AND FINAL COMPLETION**, prepare a Substantial Completion Payment Estimate covering (i) the entire value of the work performed that has not been the subject of previous Progress Payments and is

still due and owing to the Contractor; and (ii) the amount of retainage held pursuant to **ARTICLE 5.02, RETAINED PERCENTAGE,** less an amount equal to twice the value of any Remaining Work, as determined by the Engineer in accordance with that **ARTICLE** and less any other withholdings, reductions or set-offs permitted under the Contract.

1.   The Contractor shall sign the Substantial Completion Payment Estimate upon acknowledging thereon the items which it agrees and disputes (including items omitted). The date the Contractor delivers to the Engineer such Substantial Completion Payment Estimate (the "Substantial Completion Estimate Delivery Date") shall be the date the Substantial Completion Payment Estimate is issued for the amount agreed between the Engineer and the Contractor thereunder.

2.   The amount in the Substantial Completion Payment Estimate in dispute is subject to the disputes resolution provisions in **ARTICLE 8.03, DISPUTES RESOLUTION PROCEDURE**.  The Substantial Completion Estimate Delivery Date shall also be deemed to be the date of Engineer's determination for purposes of that **ARTICLE**.  If the Contractor prevails with respect to any disputed amount, then the Substantial Completion Payment Estimate shall be deemed issued for such amount retroactive to the Substantial Completion Estimate Delivery Date.

C.   In addition to the Supporting Documentation required for a Progress Payment detailed in **ARTICLE 3.05, PROGRESS PAYMENTS**, above, the required supporting documentation for the Payment on Substantial Completion is as follows:

1.   A release by the Contractor of the Contracting Party and the Authority, in a form approved by the General Counsel of the Authority, of all claims and liability to the Contractor for anything theretofore done or furnished for, or in any way relating to, the Work, except those claims expressly deleted from the scope of said release and those claims or potential claims pertaining to monies being withheld by the Authority.

2.   A statement in writing of each and all alleged claims of the Contractor against the Contracting Party or the Authority.

3.   Any other document or item specifically required by the Contract as a condition precedent to the Payment on Substantial Completion.

## ARTICLE 3.07      PROVISIONS RELATING TO FINAL PAYMENT

A.   The Receipt of Invoice for the Final Payment shall be the later of the date that (i) the Authority issues the Final Payment Certificate, and (ii) the Supporting Documentation is received at the Designated Payment Office, as described respectively in paragraphs (b) and (c) below.

B.   The Engineer shall, concurrently with the issuance of the Final Completion Certificate, prepare a Final Payment Estimate covering any monies due and owing to the Contractor.

1. The Contractor shall sign the Final Payment Estimate upon acknowledging thereon the items which it agrees and disputes (including items omitted). The date the Contractor delivers to the Engineer such Final Payment Estimate (the "Final Payment Estimate Delivery Date"), shall be the date the Final Payment Estimate is issued for the amount agreed between the Engineer and the Contractor thereunder.

2. The amount in the Final Payment Estimate in dispute is subject to the disputes resolution provisions in **ARTICLE 8.03, DISPUTES RESOLUTION PROCEDURE**. The date of the Final Payment Estimate Delivery Date shall also be deemed to be the date of Engineer's determination for purposes of that **ARTICLE**. If the Contractor prevails with respect to any disputed amount, then the Final Payment Estimate shall be deemed issued for such amount retroactive to the Final Payment Estimate Delivery Date.

C. In addition to the Supporting Documentation required for a Progress Payment detailed in **ARTICLE 3.05, PROGRESS PAYMENTS,** above, as applicable, the required supporting documentation for the Final Payment is as follows:

1. Subcontractor and Supplier guarantee(s), if any, specifically set forth in the Contract Documents.

2. Any other supporting document or item specifically stated by the Contract to be a condition precedent to the Final Payment.

## ARTICLE 3.08    PAYMENTS RELATED TO GUARANTEE OBLIGATIONS

A. The Authority may withhold from any payments to be made subsequent to the commencement of any applicable guarantee period, such sums as may reasonably be necessary to ensure completion of guarantee obligations with respect to defective work, equipment, or materials which have been identified by the Engineer.

B. The Authority may deduct from any payment due the Contractor an amount equal to its costs incurred on account of the Contractor's failure to fully perform its guarantee obligations.

C. The Engineer, prior to withholding or deducting any monies hereunder, shall give the Contractor notice of the defective work, equipment or material and the basis for the withholding or deduction.

D. Upon the Engineer's certification that the Contractor has fulfilled its guarantee obligations, the Authority will pay the Contractor any sums of money so retained as provided in paragraph (a), above, subject to Contractor's submission of, or compliance with, any remaining documentation or obligation, as the case may be, in accordance with this Contract.

## ARTICLE 3.09      SET OFFS, WITHHOLDINGS AND DEDUCTIONS

A.     The Authority may set off, deduct, or withhold from any payment due the Contractor, such sums as may be specifically allowed in the Contract or by applicable law including, without limitation, the following:

    1.     an amount of any claim by a third party, as provided in **ARTICLE 5.03, WITHHOLDING MONEY DUE CONTRACTOR TO MEET CLAIMS, LIENS OR JUDGEMENTS**.

    2.     any amounts allowed under **ARTICLES 2.02, SUBSTANTIAL COMPLETION AND FINAL COMPLETION; 2.04, AUTHORITY DAMAGES IN CASE OF DELAY; 3.04, PROMPT PAYMENT;** or **3.08, PAYMENTS RELATED TO GURANTEE OBLIGATIONS**.

    3.     any unpaid legally enforceable debt owed by the Contractor to the Authority and/or the Contracting Party, as provided in the Authority's Prompt Payment Statement.

B.     Any withholding which is ultimately held to have been wrongful shall be paid to Contractor in accordance with the Prompt Payment Statement.

## ARTICLE 3.10      PAYMENT BY THE CONTRACTOR TO SUBCONTRACTOR(S) AND SUPPLIER(S)

A.     The Contractor agrees to make all payments with respect to its Subcontractors and Suppliers in accordance with Section 139-f of the State Finance Law. Nothing provided therein or herein shall create any obligation on the part of the Authority or Contracting Party to pay or to see to the payment by the Contractor of any monies to any Subcontractor or Supplier, nor create any relationship in contract or otherwise, implied or expressed, between any such Subcontractor or Supplier and the Authority or Contracting Party. The Contractor shall include in all subcontracts that:

    1.     within seven (7) calendar days of the receipt of any payment from the Authority, the Contractor shall pay each of its Subcontractors and Suppliers the proceeds from the payment representing the value of the work performed and/or materials furnished by the Subcontractor and/or Supplier and reflecting the percentage of the Subcontractor's work completed or the Supplier's material supplied in the invoice approved by the Authority and based upon the actual value of the subcontract or purchase order, less an amount necessary to satisfy any claims, liens or judgments against the Subcontractor or Supplier which have not been suitably discharged, and less any retained amount as described in Section 139-f (2) of the State Finance Law;

    2.     within seven (7) calendar days of the receipt of payment from the Contractor, the Subcontractor and/or Supplier shall pay each of its subcontractors and suppliers in the same manner as the Contractor has paid the Subcontractor/Supplier;

3.  any payment for work performed or materials supplied that has been properly invoiced and is more than seven (7) calendar days due, shall bear interest at the rate set from time to time by the State Tax Commission.

**ARTICLE 3.11      NO ESTOPPEL AND NO WAIVER**

A.  The Authority and the Contracting Party shall not be precluded or estopped by any payment or certificate made or given by the Contracting Party, Authority, the Engineer or other officer, agent or appointee thereof under any provision of this Contract from, at any time either before or after the completion of all of the Contractor's obligations under this Contract and payment therefor pursuant to any Preliminary Estimate, Substantial Completion Payment Estimate, or Final Payment Estimate, showing the true and correct classification, amount, quality and character of the work done and materials furnished by the Contractor, or from showing at any time that such certificate is untrue or incorrect or improperly made in any particular or that the work and materials or any part thereof do not in fact conform to the requirements of this Contract. The Authority and the Contracting Party shall not be precluded or estopped, notwithstanding any certificate and payment in accordance therewith, from demanding and recovering from the Contractor such damages as it may sustain by reason of its failure to comply with the Contract Documents.

B.  Neither the acceptance by the Authority or the Engineer or any of the employees of the Authority, nor any order, measurement or certificate by the Engineer nor any order by the Authority for payment of money nor any payment for, nor acceptance of, the whole or part of the Work nor any extension of time, nor any possession taken by the Authority or the employees of the Authority shall operate as a waiver of any portion of this Contract or of any power herein reserved to the Authority or of any right to damages herein provided; nor shall any waiver of any breach of this Contract be held to be a waiver of any other or subsequent breach.

## CHAPTER 4 - CHANGES TO THE CONTRACT

### ARTICLE 4.01          NO ORAL CHANGES

Except to the extent expressly set forth in the Contract, no change in or modification, termination or discharge of this Contract, in any form whatsoever, shall be valid or enforceable unless it is in writing and signed by the party to be charged therewith or its duly authorized representative.

### ARTICLE 4.02          CLARIFICATION OF CONTRACT DRAWINGS

The Authority shall have the right during the progress of the Work to clarify the Contract Drawings to the extent that such does not materially alter such drawings and to add explanatory specifications without the same being deemed a change to the Contract.

### ARTICLE 4.03          EXTRA WORK

A.      The Authority reserves the right to order changes which may result in additions to the amount, type or value of the Work shown in the Contract Documents and which are within the general scope of the Contract in accordance with this **ARTICLE**.  Any such changes will be known as "Extra Work" and shall result in the issuance of a Change Order.

B.      No Extra Work shall be performed except pursuant to written orders of the Engineer expressly and unmistakably indicating his intention to treat the work described therein as Extra Work.  In the absence of such an order, if the Engineer shall direct, order or require any work which the Contractor deems to be Extra Work, the Contractor shall nevertheless comply therewith and shall promptly and immediately upon beginning the performance thereof or incurring costs attributable thereto, give written notice to the Engineer stating why he deems such work (hereinafter "Disputed Work") to be Extra Work.  Said notice is for the purposes of (1) affording an opportunity to the Engineer to cancel promptly such order, direction or requirement; (2) affording an opportunity to the Engineer to keep an accurate record of the materials, labor and other items involved; and (3) affording an opportunity to the Authority to take such action as it may deem advisable in light of such Disputed Work.  The Disputed Work notice must include a statement regarding any claimed entitlement to a requested extension to the Contract Schedule or claim for Impact Costs, if any.

### ARTICLE 4.04          CHANGE ORDER PROCEDURE AND BASIS FOR PAYMENT

A.      Extra Work shall result in a Change Order reflecting an equitable adjustment to the Total Contract Price representing reasonable costs related to the change in the Work.  In addition, the Change Order will include the estimated Allowable Impact Costs with respect to the Extra Work in accordance with **ARTICLE 2.07, CONTRACTOR'S DAMAGES FOR DELAY**; provided in no event shall Allowable Impact Costs hereunder include any item of cost and expense otherwise payable under the Contract, including the related Change Order or Extra Work Directive, as the case may be.  Extra Work may also result in an equitable adjustment in the Contract schedule for performance for both the Extra Work and any other work on the critical path necessarily affected by the Extra Work.

B.    1.    The Authority shall initiate the Change Order procedure by a notice to Contractor (hereinafter called "Notice of Proposed Change Order") setting forth the proposed Extra Work. As promptly as practical, but in no event more than fifteen (15) calendar days of the Contractor's receipt of Notice of a Proposed Change Order (or such longer period as the Engineer may allow, under exceptional circumstances), the Contractor shall provide to the Engineer a detailed Change Order Proposal which shall include requested revisions to the Contract, including but not limited to adjustments to the cost for the Extra Work, estimated allowable Impact Costs associated with the Extra Work and schedule for performance, as provided above. Any unauthorized delay in the submittal of the Change Order Proposal shall result in a day-for-day reduction in any extension of time to which Contractor would otherwise have been entitled for the Extra Work.

       2.    The Contractor is required to provide sufficient accurate and current data in support of each of the components of the Change Order Proposal (labor and material costs, allowable Impact Costs and Schedule revisions) demonstrating its reasonableness. In furtherance of this obligation, the Contractor must submit cost breakdowns of any submitted claimed expenses, including but not limited to: material cost, labor cost, labor rates by trade and work classification and overhead rates in support of the Contractor's Change Order Proposal. The Contractor agrees that the Change Order Proposal with respect to price will in no event include a combined profit and home office overhead rate in excess of twenty-one percent (21%) of the direct labor and material costs, unless the Engineer determines that the complexity and risk of the Extra Work is such that an additional factor is appropriate. However, when the Extra Work is going to be performed by other than the Contractor's own forces or affiliates, Contractor shall be paid the reasonable cost of the work plus an additional five percent (5%) to cover Contractor's profits, superintendence, administration, insurance and home office overhead expenses. The Contractor agrees that any costs included in the Change Order Proposal to support the proposed price must be allowable under the cost principles of FAR Part 31.2.

C.    1.    Where the Authority determines that the nature of the Extra Work is such that its cost cannot be accurately estimated, the Contractor shall be entitled to an adjustment to the Total Contract Price based on the "Actual and Necessary Net Cost" for the Extra Work as defined below. In the event that the Authority is willing to issue a Change Order based on payment to the Contractor for its Actual and Necessary Net Cost, the Authority shall so provide in its Notice of Proposed Change Order. Contractor's Change Order Proposal shall then reflect its acknowledgement of same, and include any request for allowable Impact Costs and Schedule revisions, with any necessary supporting documentation.

       2.    "Actual and Necessary Net Cost" shall be deemed to include the actual and necessary cost of the Extra Work for: (i) labor, including in addition to wages, contributions, if any, made by the Contractor as employer pursuant to bona fide collective bargaining labor agreements applicable to the Work; (ii) an engineering field survey party, consisting exclusively of a chief of party, an instrument person, and one or more rodmen, the number of rodmen to be subject to the approval of the Engineer, which cost in addition to wages shall include contributions, if any, made by the Contractor as employer pursuant to

bona fide collective bargaining labor agreements applicable to the Work; (iii) insurance upon the aforementioned labor and field survey party under the Workers' Compensation law but in no event to exceed Contractor's present rates; (iv) contributions pursuant to the State Unemployment Insurance Law; (v) excise taxes pursuant to the Federal Social Security Act; (vi) any increase in premiums for public liability and property damage insurance or performance and payment bonds occasioned solely by the Extra Work; (vii) all materials used upon doing the Work or incorporated in the Work; (viii) the actual and necessary operating expense of plant (except the expense of supplies and small tools not operated by mechanical or electric power), power for such plant and a reasonable rental for the same (including small power tools), as determined by the Engineer; and (ix) furnishing and installing temporary lighting and heating facilities required solely for the Extra Work and, when and as determined by the Engineer, the cost, if any, of power or fuel expended therefor; but the amount of labor, materials, plant, facilities and power to be paid for shall not exceed the amount which, in the opinion of the Engineer, is necessary in the performance of such Extra Work.

3.    Except as otherwise specifically provided herein, the said twenty-one percent (21%) shall be deemed to include the cost of heat, light, use and upkeep of tools, supplies, administration, engineering, superintendence, insurance (except as otherwise provided as a direct charge in subparagraph i) and all loss, damages, risks and expenses herein mentioned in **CHAPTER 6, CONTRACTOR'S LIABILITY AND INSURANCE**.

4.    The amount of insurance upon such labor and field survey party under the Workers Compensation Law shall be determined by the amount of the wages actually and necessarily paid for such labor and field survey party and the rate of insurance for such labor and field survey party either in the State Insurance Fund or in any stock corporation or mutual association authorized to transact the business of workers' compensation insurance in this State, as the case may be.  If the Contractor shall not have insured either in such State Insurance Fund or in any such stock corporation or mutual association, the rate allowed will be the rate which it would have been required to pay for such insurance in the State Insurance Fund had it insured therein.

5.    In case any work or materials shall be required to be done or furnished under the provisions of this **ARTICLE**, the Contractor shall at the end of each day furnish to the Authority such documentation as the Authority may require to support all costs of the Extra Work.  If payments on account are desired as the Work progresses, the Contractor shall render an itemized statement showing the total amount expended for each class of labor and for each kind of material on account of each item of such work as a condition precedent to the inclusion of such payment in any partial estimate.  Upon the request of the Authority, the Contractor shall produce for audit by the Authority books, vouchers, collective bargaining labor agreements, records or other documents showing the actual cost for labor and materials.  Such documents shall not be binding on the Authority.  Any question or dispute as to the correct cost of such labor or materials or plant shall be determined by the Engineer.

6.  In case the Contractor is ordered to perform work under this **ARTICLE**, which, in the opinion of the Engineer, is impracticable to have performed by the Contractor's own employees, the Contractor will, subject to the approval of the Engineer, be paid the actual cost to Contractor of such work, and in addition thereto five percent (5%) to cover the Contractor's superintendence, administration and other overhead expenses.

7.  Payment of any amount under the foregoing subparagraphs of this **ARTICLE** shall be subject to subsequent audit and approval, disapproval, modification or revision by representatives of the Authority, the Contracting Party, the State and the Government.

D.  The Contractor must utilize the last, accepted CPM update (or Bar Chart) and status it to the date of delay event for use in its Change Order Proposal to establish the cost and schedule modifications. Contractor's Change Order Proposal must include a schedule subnet and an explanation of the cost and schedule impact of the Extra Work on the Project. The Contractor must clearly demonstrate how it proposes to incorporate the Extra Work into the Schedule Document. If Contractor fails to notify the Engineer of the schedule changes associated with a Notice of Proposed Change Order by submitting a time extension request with accurate and complete supporting documentation, then, it will be deemed to be an acknowledgment by Contractor that the proposed Extra Work will not have any scheduling consequences. The Change Order Proposal may be accepted or modified by negotiations between the Contractor and the Authority. The Engineer reserves the right to reject any Change Order Proposal which does not include accurate or complete supporting documentation. Following negotiations on direct costs and any necessary schedule adjustment associated with the Extra Work, a Change Order shall be executed in writing by both parties (which, for the Authority, shall be the Division of Materiel's authorized officer).

E.  Regarding any request for Impact Costs, Contractor must submit sufficient documentation of any such costs in accordance with **ARTICLE 2.07, CONTRACTOR'S DAMAGES FOR DELAY, paragraph B.** Following the issuance of the notice to proceed for the Extra Work, the parties will negotiate to reach agreement as to what will be entitled to be paid as any allowable Impact Costs associated with the Change Order, in the event that Substantial Completion of the Work is actually and necessarily delayed by the performance of the Extra Work. These negotiations shall continue for a period not to exceed sixty (60) days, at which time – in the absence of an agreement on Impact Costs – the Authority shall issue an Extra Work Directive for impact costs (if any) to which it believes Contractor to be entitled. If Contractor further disagrees with the terms of the Extra Work Directive or the Authority's determination that Contractor is not entitled to any Impact Costs, it shall initiate a Dispute in accordance with the **ARTICLE 8.03, DISPUTES RESOLUTION PROCEDURE,** within ten (10) days of the issuance of the Extra Work Directive in accordance with **ARTICLE 4.05, EXTRA WORK DIRECTIVE**.

F.  The execution by Contractor of a Change Order shall operate as a release of the Contracting Party and the Authority from all claim and liability to the Contractor relating to, or in connection with, the Extra Work, including any additional claims (beyond that which was included in its Change Order Proposal and subject to the terms above) for impact costs and time extensions, and further including any claims for any prior act, neglect, fault or default of the Authority relating to the Extra Work.

**ARTICLE 4.05     EXTRA WORK DIRECTIVE**

A.    If the parties fail to reach agreement with respect to deletion of or extra work pursuant to **ARTICLES 4.06, DELETED WORK** or **4.03, EXTRA WORK**, respectively, or in case of exigent circumstances, the Authority may nevertheless issue a directive regarding the proposed deletion or Extra Work ("Extra Work Directive").  Any modifications to the proposed Extra Work set forth in the Notice of Proposed Change Order must be previously reflected in a revised Notice of Proposed Change Order submitted in accordance with **ARTICLE 4.04, CHANGE ORDER PROCEDURE AND BASIS FOR PAYMENT**.  Immediately upon receipt, the Contractor shall be obligated to proceed with the work, or deletion of Work, as set forth in an Extra Work Directive.

B.    If the Contractor is unwilling to agree to the terms of the Extra Work Directive, Contractor must initiate a Dispute regarding the issue(s) upon which the parties were unable to agree in accordance with **ARTICLE 8.03, DISPUTES RESOLUTION PROCEDURE**.  Contractor shall furnish a written statement to the Chief Engineer within ten (10) days of the Extra Work Directive, based upon any aspect of such Directives which the Contractor disputes; provided, however, that such dispute must relate to specific matters raised or specific matters reserved by the Contractor in its Change Order Proposal that were not resolved prior to the issuance of the Extra Work Directive.  The written statement must set forth all details of Contractor's claims including the manner that the disputed item was specified in the Contractor's Change Order Proposal.  During the pendency of any dispute hereunder, the Contractor must proceed with work as set forth in the Extra Work Directive unless otherwise advised by the Engineer's written instructions.  In the event that there is a dispute as to price, the Extra Work Directive shall include the amount which the Authority is willing to pay Contractor for the Extra Work (or in the event deleted work, the credit therefor), or identify the estimated Allowable Impact Costs or extension of time for the Extra Work.  During the pendency of the Dispute, Contractor will be paid in accordance with the Authority's estimate for the Extra Work or credit for deleted work, as stated in the Extra Work Directive.  In the event that, as a result of the decision by the Arbiter or other settlement between the parties, another price or credit for the Extra Work is determined to be payable to Contractor or time extension is determined to be due, the Extra Work Directive will be modified to reflect the final determination of the cost or time for the Extra Work.  Payment made hereunder will be in full satisfaction of Contractor's claim for an adjustment to the Total Contract Price or Schedule.

C.    Payment of any amount under the foregoing subparagraphs of this **ARTICLE** shall be subject to subsequent audit and approval, disapproval, modification or revision by representatives of the Authority, the Contracting Party, the State and the Government.

**ARTICLE 4.06     DELETED WORK**

A.    The Authority reserves the right to delete portions of the Work which shall result in a reduction to the Total Contract Price.  In the event that the Authority issues a Notice of Proposed Change Order which would result in a reduction in the amount, type or value of the Work, Contractor shall submit a Change Order Proposal in accordance with the procedures set forth in **ARTICLE**

**4.04, CHANGE ORDER PROCEDURE AND BASIS FOR PAYMENT**, which proposal would reflect a credit in the amount payable to Contractor and a schedule adjustment for the portion of the Work to be deleted and/or other portions of the Work on the critical path.

B.      The Credit submitted in the Change Order Proposal which will result in a reduction to the Total Contract price must be based on the unit prices included in the Bid or upon a demonstrated reasonable cost associated with that portion of the Work being deleted, and including any savings associated with a schedule adjustment.  With respect to the deletion of work which was to have been performed by Contractor's own forces: (1) the credit shall also include the Contractor's combined overhead and anticipated profit associated with that work at the rate of twenty-one percent (21%) of the direct labor and material.  With respect to the deletion of work which was to have been performed by a Subcontractor or Supplier, the credit shall include: (1) an additional five percent (5%) of the amount thereof, representing Contractor's overhead, administration and profit on that portion of the work; and (2) twenty-one percent (21%) of the amount of the deleted work, representing the Subcontractor's or Supplier's overhead and profit on that portion of the Work.  The above-noted percentages shall apply unless the Authority determines that a different percentage for overhead and/or profit is appropriate.

C.      In the event that the parties are unable to agree on the terms of the credit Change Order Proposal, including any schedule adjustment, then the procedures regarding the Extra Work Directive set forth in **ARTICLE 4.05, EXTRA WORK DIRECTIVE,** shall apply.

## CHAPTER 5 - SECURITY FOR THE PERFORMANCE OF WORK

### ARTICLE 5.01     PERFORMANCE AND PAYMENT BONDS

A.     The Contractor shall be required to furnish Performance and Payment Bonds as set forth in the **INFORMATION FOR BIDDERS**.

B.     In case a surety shall become insolvent, its license is revoked or suspended, or in the case of a surety approved on the basis that it is listed as an approved federal surety, that such federal approval is revoked or suspended, the Contractor, within ten (10) days after notice by the Authority, shall substitute other and sufficient surety or sureties.  If the Contractor fails to do so, such failure shall be an Event of Default.

C.     In lieu of defaulting the Contractor under **PARAGRAPH B** above, the Authority may allow the Contractor to continue the Work, in which event the Authority may deduct from any monies then due or which thereafter may come due to the Contractor the amount for which the surety shall be held and bound upon the said bond.  The monies so deducted may be held by the Authority as collateral security for the performance of the conditions of the bonds and such monies shall in such case be deemed to have been paid to the Contractor under this Contract.

### ARTICLE 5.02     RETAINED PERCENTAGE

As additional security for the faithful performance of this Contract, the Authority shall deduct and retain from all progress payments five percent (5%) percent of the amount certified to be due thereunder.

### ARTICLE 5.03     WITHHOLDING MONEY DUE CONTRACTOR TO MEET CLAIMS, LIENS OR JUDGMENTS

A.     If at any time a claim, lien or judgment shall be made by any person or corporation against the Contractor, the Contracting Party, the Authority, the State or the Government for which Contractor is liable under this Contract or otherwise by law, with respect to matters pertaining to the Work, the amount of such claim, lien or judgment or so much thereof as may be deemed reasonable shall be retained by the Authority, in addition to the other sums herein authorized by the Contract to be so retained, out of any monies then due or thereafter becoming due to the Contractor hereunder as security for the payment of such claim, lien or judgment.  If the liability of any such party on such claim(s) or lien(s) shall have been finally adjudicated by a judgment of a court of competent jurisdiction or such claim(s) or lien(s) shall have been admitted by the Contractor to be valid, then the claim or lien or judgment may be paid from the amount so retained hereunder, credited against the payments due to the Contractor, and the balance, if any, paid to the Contractor.

B.     Should any claim, lien or judgment remain unsatisfied at the time the Substantial Completion or Final Payments are due, the Authority shall have the right to retain out of either payment a sum it determines to be sufficient to protect the Contracting Party and the Authority in regard to all such unsatisfied claims, liens and judgments.  In lieu of the foregoing, the Authority may require other security.

C.      In case the amount thus retained should be insufficient to pay the amount adjudicated to be due upon such claim, lien or judgment, the Contractor shall pay the amount of the deficiency to the Authority.

D.      Notwithstanding anything in this Article to the contrary, in the event of a claim by persons or corporations other than the Contracting Party or Authority, the Authority shall not withhold money due to the Contractor provided the Authority receives adequate written assurance from the Contractor's insurance carrier or surety on bonds required hereunder that the insurer or surety will assume all responsibility in connection with the claim including defending the Contractor, Contracting Party or Authority in any lawsuit, and paying any judgment based on said claim. The Authority shall have sole discretion to determine the adequacy of the assurance furnished.

**ARTICLE 5.04        SUBSTITUTION OF APPROVED SECURITIES**

A.      The Contractor may from time to time withdraw portions of the amounts so retained under **ARTICLE 5.02, RETAINED PERCENTAGE** or monies otherwise withheld under the Contract provided any such monies have not been applied by the Authority for reimbursement to itself or a third party in accordance with applicable provisions of the Contract by depositing with the Fiscal Officer of the Authority approved securities with a market value equal to the amount to be withdrawn.

B.      The Contractor shall pay to the Authority the service charges then in effect for the custodial safekeeping of securities deposited with the Authority by the Contractor pursuant to the terms of this Contract.

C.      Approved securities are: securities of the United States Government, State of New York, the City, the Authority, the MTA or Triborough Bridge and Tunnel Authority. Other securities may be submitted for Authority approval. All such securities must be payable to, run in favor of, or be transferred to, the Authority. In case the securities shall, during the term of the Contract, diminish in market value in the opinion of the Authority, or are sold as set forth in **ARTICLE 5.05, USE OF MONIES WITHHELD**, below, then, within ten (10) days after notice, the Contractor shall deposit cash or securities to restore the value to that originally stated.

        A failure by the Contractor to deposit such cash or securities in accordance herewith shall be an Event of Default.

        In lieu of defaulting the Contractor, the Authority may allow the Contractor to proceed with the Work and may deduct from any monies then due or which thereafter may become due to the Contractor the amount necessary to restore the original valuation of such securities, and to hold such amount in lieu thereof.

D.      The Authority shall pay to the Contractor all interest, dividends and other income on the securities, when and as collected. If the securities are in the form of coupon bonds, the coupons as they respectively become due shall be delivered to the Contractor; provided, however, that the

Contractor shall not be entitled to interest, dividends or other income on any securities the proceeds of which shall be used or applied as authorized under the Contract.

**ARTICLE 5.05        USE OF MONIES WITHHELD**

Deposits, retainage or other monies withheld, whether in cash or securities substituted shall be security for the faithful performance of the Contract by the Contractor.  In case any default causes loss, damage or expense to the Contracting Party or the Authority, then the Authority may apply the amount necessary to restore such loss, damage or expense including liquidated damages, out of the said securities (which may be sold), deposits, retainage or other monies.

## CHAPTER 6 - CONTRACTOR'S LIABILITY AND INSURANCE

**ARTICLE 6.01     INDEMNIFIED PARTIES**

A.   The term "Indemnified Parties," whenever referred to in this Contract shall consist of the following parties including their officers, employees and agents:

1. The City
2. The Authority
3. The Government
4. The State
5. The MTA

**ARTICLE 6.02     RESPONSIBILITY FOR INJURIES TO PERSONS AND PROPERTY**

A.   The Contractor shall be solely responsible for (1) all injuries (including death) to persons, including but not limited to employees of the Contractor and Subcontractors and Indemnified Parties and (2) damage to property, including but not limited to property of the Indemnified Parties, the Contractor or its Subcontractors.  The liability hereunder shall be limited to such injuries or damage occurring on account of, or in connection with, the performance of the Work, whether or not the occurrence giving rise to such injury or such damage happens at the Project Site or whether or not sustained by persons or to property while at the Project Site, but shall exclude injuries to such persons or damage to such property to the extent caused by the negligence of the Contracting Party or the Authority.

B.   The Contractor's liability hereunder includes any injury (including death) or damage to property related to the performance of, including the failure to perform, Miscellaneous and Incidental Work.

C.   The Contractor expressly acknowledges that it has reviewed the Contract Documents and if the Work be done without fault or negligence on the part of the Contractor, such Work will not cause any damage to the foundations, walls or other parts of adjacent, abutting or overhead buildings, railroads, bridges, structures or surfaces.

**ARTICLE 6.03     INDEMNIFICATION**

A.   The Contractor shall indemnify and save harmless the Indemnified Parties, to the fullest extent permitted by law, from loss and liability upon any and all claims and expenses, including but not limited to attorneys' fees, on account of such injuries to persons or such damage to property, irrespective of the actual cause of the accident, irrespective of whether it shall have been due in part to negligence of the Contractor or its subcontractors or negligence of the Indemnified Parties, or of any other persons, but excepting bodily injuries and property damage to the extent caused by the negligence of the Contracting Party or the Authority.

B.   The term "loss and liability," as used herein, shall be deemed to include, but not be limited to, liability for the payment of workers' compensation benefits under the Workers' Compensation

Law of the State of New York, or of judgments under the Federal Employees' Liability Act or similar statutes.

C.    Except as otherwise provided in (a) above, the liability of the Contractor under this **ARTICLE** is absolute and is not dependent upon any question of negligence on its part or on the part of its agents, officers or employees. The approval of the Authority of the methods of doing the Work or the failure of the Authority to call attention to improper or inadequate methods or to require a change in methods or to direct the Contractor to take any particular precautions or to refrain from doing any particular thing shall not excuse the Contractor in case of any such injury to person or damage to property.

D.    In case any damage shall occur to any part of the New York City Transit System (except only for the removal of such parts thereof as the Contractor is specifically required by this Contract to remove) on account of the Work, and the Contractor is responsible therefor, the Authority shall have the right to cause such damage to be repaired and to charge the expense of such repairs to the Contractor. In the event that such work is performed by the Authority, then the Authority shall deduct the amount of such expense that may be incurred in repairing any such damage from any monies due or to become due to the Contractor under this Contract or any other agreement between the Contractor and the Contracting Party or the Authority.

## ARTICLE 6.04    RISK OF LOSS TO THE WORK

A.    The Contractor assumes risk of loss or damage to the Work to the fullest extent permitted by applicable law, irrespective of whether such loss or damage arises from acts or omissions (whether negligent or not) of the Contractor, the Authority or third persons, or from any cause whatsoever, excepting loss or damage arising solely from negligent or willful acts of the Authority, occurring prior to Substantial Completion and risk of loss or damage to Remaining Work until Final Completion of all the Work, except that if the failure to complete the Remaining Work causes damage to the Work or other parts of the NYCTS, the Contractor shall be responsible for all resulting loss or damage. When risk of loss to the work (or a portion thereof) is transferred to the Authority, the Authority shall thereafter assume responsibility for the care, protection and ordinary upkeep (excluding Contractor's warranty obligations) for said Work, except to the extent that Contractor remains responsible for Remaining Work or is otherwise responsible for loss or damage as provided in this chapter.

B.    In the event that a part of the Work is identified in the **SPECIAL CONDITIONS** as subject to the Authority's determination of Beneficial Use, then risk of loss for the specified part of the Work shall transfer to the Authority upon the Beneficial Use Certification, except that if the absence of any work awaiting completion subsequent to issuance of the Beneficial Use Certification causes damage to the Work or the NYCTS, the Contractor shall be responsible for all resulting loss or damage.

C.    Contractor's obligation hereunder is to immediately repair, replace and make good such loss or damage so as to restore the Work to the same character and condition as before the loss or damage in accordance with the Contract Documents without cost to the Authority.

D.    Risk of loss or damage to work trains, cranes, or special equipment supplied and operated by the Authority shall be on the Authority, but the Contractor shall be responsible for loss or damage thereto arising out of Contractor's failure to fulfill a contractual obligation hereunder or the negligence or willful act of the Contractor, its subcontractors and suppliers.

**ARTICLE 6.05        REQUIRED INSURANCE**

Except as otherwise provided in the **SPECIAL CONDITIONS**, the Contractor shall procure, at its sole cost and expense, and shall maintain in force at all times during this Contract until Final Completion, policies of insurance as set forth in **SCHEDULE A, INSURANCE REQUIREMENTS.**

## CHAPTER 7 - CONTRACTOR'S DEFAULT

### ARTICLE 7.01          EVENT OF DEFAULT

A.       An Event of Default shall mean a material breach of the Contract by the Contractor which, without limiting the generality of the foregoing and in addition to those instances specifically referred to in the Contract as a material breach or an Event of Default, shall include a determination by the Engineer that: (i) performance of this Contract is unnecessarily or unreasonably delayed; (ii) the Contractor is willfully violating any of the provisions of the Contract Documents or is not executing the same in good faith and in accordance with this Contract; (iii) the Contractor has abandoned the Work; (iv) Contractor has become insolvent (other than as a bankrupt), or has assigned the proceeds of this Contract for the benefit of creditors, or taken advantage of any insolvency statute or debtor or creditor law or if his property or affairs have been put in the hands of a receiver; (v) Contractor has failed to obtain an approval required by the Contract; or (vi) the Contractor has failed to provide "adequate assurance" as required under paragraph (b) hereof.

B.       When, in the opinion of the Engineer, reasonable grounds for insecurity exist with respect to the Contractor's ability to perform the Work or any portion thereof, the Authority may request that Contractor, within a reasonable time, provide written adequate assurance of its ability to perform in accordance with the Contract.  Such assurance must be provided by Contractor within the time set forth in the Authority's request.

### ARTICLE 7.02          NOTICE OF DEFAULT/OPPORTUNITY TO CURE

If an Event of Default occurs, the Authority may so notify the Contractor ("Default Notice"), specifying the basis(es) for such default, and advising the Contractor that, unless such default be rectified to the satisfaction of the Authority within seven (7) days from such Default Notice, the Contractor shall be in default; except that, at its sole discretion, the Authority may extend such seven (7) day period for such additional period as the Authority shall deem appropriate without waiver of any of its rights hereunder. The Default Notice shall specify the date the Contractor is to discontinue all Work (the "Termination Date"), and thereupon, unless previously rescinded by the Authority, the Contractor shall discontinue the Work upon the Termination Date.

### ARTICLE 7.03          REMEDIES IN THE EVENT OF DEFAULT

A.       Upon Contractor's default, the Authority shall have the right to either complete the Work with its own forces and/or other contractors or to require the Surety to complete the Work under the Performance Bond hereunder.  The Authority, in connection with its right to complete the Work, may take possession of and use any or all of the materials, plant, tools, equipment, supplies and property of every kind provided by the Contractor, and/or procure other materials, plant, tools, equipment, supplies and property for the completion of the same, and to charge the expense of said labor, materials, plant, tools, equipment, supplies and property to the Contractor.

B.      If a Default occurs, Contractor shall be liable for all damages resulting from the Default, including the difference between the Total Contract Price and the amount actually expended by the Authority to complete the Work, and further including the liquidated damages herein referred to for delay in the completion of the Work beyond the Substantial Completion Date. The Contractor shall also remain liable for any other liabilities and claims related to the Contract. All damages may be deducted and paid out of such monies due the Contractor.

C.      The Authority may also bring any suit or proceeding for specific performance or for injunction or to recover damages or to obtain any other relief or for any other purpose proper under this Contract.

D.      The Authority may in its sole discretion waive a default by the Contractor, but no such waiver, and no failure by the Authority to take action in respect to any default, shall be deemed a waiver of any subsequent default.

E.      If the Authority makes a determination pursuant to this Chapter to hold the Contractor in default and/or terminate the Contract for cause, and it is determined subsequently for any reason whatsoever that either such determination was improper, unwarranted or wrongful, then any such termination shall be deemed for all purposes to have been a termination for convenience in accordance with **ARTICLE 2.09, TERMINATION FOR CONVENIENCE BY THE AUTHORITY**. The Contractor agrees that it shall be entitled to no damages, allowance or expenses of any kind other than as provided for in that article in connection with any such termination.

## ARTICLE 7.04      THE CONTRACTING PARTY AND THE AUTHORITY MAY AVAIL THEMSELVES OF ALL REMEDIES

The Contracting Party and the Authority may avail themselves of each and every remedy herein specifically given to them or now or hereafter existing at law or in equity or by statute, and each and every such remedy shall be in addition to every other remedy so specifically given or otherwise so existing and may be exercised from time to time and as often and in such order as may be deemed expedient by the Authority, and the exercise, or the beginning of the exercise, of one remedy shall not be deemed to be a waiver of the right to exercise, at the same time or thereafter, any other remedy.

## CHAPTER 8 - AUTHORITY OF THE ENGINEER: DISPUTES AND CLAIMS

### ARTICLE 8.01       AUTHORITY OF THE ENGINEER

A.      The Contractor hereby authorizes the Engineer to determine in the first instance all questions of any nature whatsoever arising out of, under, or in connection with, or in any way related to or on account of, this Contract including without limitation: questions as to the value, acceptability and fitness of the Work; questions as to either party's fulfillment of its obligations under the Contract, negligence, fraud or misrepresentation before or subsequent to acceptance of the Bid; questions as to the interpretation of the Specifications and Contract Drawings; and claims for damages, compensation and losses.

B.      The Engineer may give orders to do work which he determines to be necessary for Contractor to fulfill the Contractor's obligations under the Contract.  The Engineer may also give orders in every case in which an unsafe condition shall arise in performance of the Work.

C.      The Engineer will promptly provide appropriate explanations and reasons for his determinations and orders hereunder, if requested by the Contractor.  All determinations under this article shall be reasonable.

D.      The Contractor shall be bound by all determinations or orders and shall promptly obey and follow every order of the Engineer, including the withdrawal or modification of any previous order and regardless of whether the Contractor agrees with the Engineer's determination or order. Orders shall be in writing unless not practicable, in which event any oral order must be confirmed in writing by the Engineer as soon thereafter as practicable.

E.      The Contractor shall have a representative at the Work Site at all times during performance of the Work authorized to receive orders from the Engineer.

### ARTICLE 8.02       APPROVALS BY ENGINEER; NO LIABILITY

Any review, acceptance or approval by the Engineer shall be construed merely to mean that the Engineer was unaware of any reason, at that time, to object thereto.  No such approval by the Engineer of any modification, sample, Schedule Document, substitution, drawing or other matter shall impose any liability upon the Authority or Contracting Party, nor shall any such approval change any of the requirements of the Contract Documents or relieve the Contractor of any responsibilities under the Contract, including without limitation, the accuracy of drawing or any obligation under any warranty provision.

### ARTICLE 8.03       DISPUTES RESOLUTION PROCEDURE

A.      The provisions of this Article shall constitute the Contractor's sole means for challenging any determination, order or other action of the Engineer pursuant to **ARTICLES 8.01, AUTHORITY OF THE ENGINEER,** or **8.02, APPROVALS BY THE ENGINEER; NO LIABILITY,** or otherwise asserting against the Contracting Party or Authority any claim of

whatever nature arising under, or in any way relating to, this Contract (any such challenge or assertion by the Contractor shall be herein referred to as a "Dispute"). Exhaustion of these dispute resolution procedures including the judicial review set forth in **ARTICLE 8.03, DISPUTES RESOLUTION PROCEDURE,** shall be the parties' sole remedy in connection with any Dispute.

B.    The parties to this Contract hereby authorize and agree to the resolution of all Disputes arising out of, under, or in connection with, the Contract in accordance with the following and pursuant to the procedures set forth in paragraph (c) hereof:

1.    With respect to any Dispute which relates in whole or primary part to technical issue(s) under the Contract including, without limitation, determinations as to the acceptability or fitness of any work, the meaning or interpretation of the Specifications or Contract Drawings, the question of whether Disputed Work falls within the scope of the Specifications, the acceptability of any proposed substitutions, modifications or other submission under the Contract, the disapproval of proposed Subcontractors or Suppliers (to the extent such disapproval is related to technical issues), the determination of Excusable Delay to the extent the delay claim is related to a technical matter, the question of whether Beneficial Use, Substantial Completion or Final Completion has been achieved, or the nature and extent of any Remaining Work, the parties hereby authorize the Chief Engineer of the Authority (the "Chief Engineer"), acting personally, to render a final and binding decision.

2.    With respect to any Dispute other than those specified in subparagraph (1) hereof, except where the parties agree to elect resolution thereof by the Chief Engineer, the parties hereby authorize the Authority's Contractual Disputes Review Board (CDRB) to render a final and binding decision in accordance with the "Guidelines for the Submission of Disputes to the CDRB" which are available from the Procurement Representative and incorporated herein by reference. It is understood and agreed that the composition of the CDRB shall be comprised of officers and/or employees of MTA, and/or its respective affiliate agencies, but excluding for purposes of disputes arising from NYCTA contracts, participants from the Authority. The parties further agree that the above-mentioned Guidelines may be subject to periodic amendment by the Authority; however such amendment would not alter any substantive or due process rights accorded the Contractor under this **ARTICLE**.

C.    All Disputes shall be initiated through a written submission by either party (such submission to be hereinafter referred to as the "Dispute Notice"), to the Chief Engineer or the CDRB, as the case may be (hereinafter jointly referred to as "the Arbiter"), within the time specified in the Contract or, if no time is specified, within ten (10) days of the determination which is the subject of the Dispute. Within ten (10) days after the submission of such Dispute Notice, the party initiating the Dispute must provide the Arbiter with all evidence and other pertinent information in support of the party's position and/or claim. Within thirty (30) days from the date of the Dispute Notice, the party against whom the Dispute Notice was filed shall submit any and all materials which it deems pertinent to the Arbiter. Upon submission of a Dispute Notice to the CDRB, either party may request that the CDRB provide informal non-binding mediation in an

effort to reach a settlement of the dispute. If requested, the CDRB shall appoint a mediator to meet with the parties in accordance with the "Guidelines for the Submission of Disputes to the CDRB." Each party agrees to participate in mediation at the request of the other. If mediation is unsuccessful or is not undertaken, the Arbiter shall render its decision in writing and deliver a copy of same to the parties within a reasonable time not to exceed sixty (60) days after the receipt of all materials. In rendering such decision, the Arbiter may seek such technical or other expertise as it shall deem necessary or appropriate (notifying both parties to the dispute when he/she so seeks such other information or expertise) and seek any such additional oral and/or written argument or materials from either or both parties to the dispute as it deems fit. The Arbiter shall have the discretion to extend the time for submittals required hereunder.

The Arbiter's ability to render and the effect of a decision hereunder shall not be impaired or waived by any negotiations or settlement offers in connection with the matter presented, whether or not the Arbiter participated therein, or by any prior decision of others, or by any termination or cancellation of this Contract. The decision of the Arbiter shall be final and binding on both parties.

D. In the event that a dispute is submitted to the CDRB pursuant to subparagraph (b)(2) hereof and the party against whom the Dispute Notice was filed asserts that such dispute is properly within the domain of the Chief Engineer as defined in subparagraph (b)(1), that party shall file with the CDRB a notice as to its position in this regard within the time otherwise permitted for its submission of all materials pursuant to paragraph (c). The filing of such a notice shall stay all further proceedings with respect to the Dispute, including the submission of materials, pending disposition of such question by the CDRB. The CDRB may request such material(s) and/or argument(s) as it deems appropriate in connection with such question and shall render its decision within ten (10) days of its receipt of all such material(s) and/or argument(s). The party against whom the Dispute Notice was filed shall, within ten (10) days of such decision, thereupon submit any and all materials which it deems pertinent with respect to the substance of the Dispute to the Arbiter as thus determined.

E. It is expressly understood and agreed that the pendency of a Dispute hereunder shall at no time and in no respect constitute a basis for any modification, limitation or suspension of Contractor's obligation to fully perform in accordance with the Contract and that Contractor shall remain fully obligated to perform the Work notwithstanding the existence of any such Dispute.

## ARTICLE 8.04    ADDITIONAL PROVISION RELATING TO THE PROSECUTION OF CLAIMS FOR MONEY DAMAGES

A. Except as otherwise provided in the Contract, if the Contractor claims or intends to claim compensation for any damage or loss sustained by reason of any act, neglect, fault or default of the Contracting Party or the Authority, the Contractor shall furnish a written notice to the Engineer setting forth the nature of the claim and the extent of the damage sustained within seven (7) days of the incurrence of such loss or damages. This written notice shall constitute the Contractor's submission to the Engineer for the purposes of requesting the Engineer's determination in accordance with **ARTICLE 8.01, AUTHORITY OF THE ENGINEER,** above. Any such claim shall state as fully as then possible all information relating thereto and

shall be supported by any then-available documentation, including daily records showing all costs incurred. Such information shall be supplemented with any and all further information, including information relating to the quantum of losses or damages sustained, as soon as practicable after it becomes or reasonably should become known to the Contractor.

B.    Any claim for compensation or monetary damages, the successful prosecution of which necessarily depends upon a technical determination favorable to the Contractor, may not proceed unless and until the Contractor first obtains such a favorable determination with respect to the technical issue and must be made within five (5) days of such determination; notwithstanding the foregoing, Contractor must submit to the Engineer any documentation or proof in support of the monetary claim within seven (7) days of the incurrence of such loss or damage as otherwise set forth above in order to proceed with such a claim.

C.    Compliance with the provisions hereof shall constitute a condition to the Contractor's submission of a Dispute pursuant to **ARTICLE 8.03, DISPUTES RESOLUTION PROCEDURE, paragraph B.2.** with respect to any claim for compensation and the Contractor shall be deemed to have waived any claim not submitted in accordance herewith.

## ARTICLE 8.05    CHOICE OF LAW, CONSENT TO JURISDICTION AND VENUE

A.    Any final determination of the Arbiter with respect to a Dispute initiated pursuant to **ARTICLE 8.03, DISPUTES RESOLUTION PROCEDURE,** shall be subject to review solely in the form of a challenge following the decision by the Arbiter, in a Court of competent jurisdiction of the State of New York, County of Kings or New York, under Article 78 of the New York Civil Practice Law and Rules or a United States Court located in New York City, under the procedures and laws applicable in that court, it being understood the review of the Court shall be limited to the question of whether or not the Arbiter's determination is arbitrary, capricious or lacks a rational basis. No evidence or information shall be introduced or relied upon in such proceeding which has not been duly presented to the Arbiter in accordance with **ARTICLE 8.03, DISPUTES RESOLUTION PROCEDURE**.

B.    This Contract shall be deemed to be executed in the City of New York, State of New York, regardless of the domicile of the Contractor, and shall be governed by and construed in accordance with the laws of the State of New York.

C.    To effect this agreement and intent the Contractor agrees:

1.    If the Contracting Party or the Authority initiate any action against the Contractor in Federal Court or in New York State Court, service of process may be made on the Contractor either in person, wherever such Contractor may be found, or by registered mail addressed to the Contractor at its address as set forth in this Contract, or to such other address as the Contractor may provide to the Authority in writing.

2.    With respect to any action between the Contracting Party or the Authority and the Contractor in New York State Court, the Contractor hereby expressly waives and relinquishes any rights it might otherwise have (i) to move to dismiss on grounds of

forum non conveniens, (ii) to remove to Federal Court; and (iii) to move for a change of venue to a New York State Court outside Kings or New York County.

3. With respect to any action between the Contracting Party or the Authority and the Contractor in Federal Court located in New York City, the Contractor expressly waives and relinquishes any right it might otherwise have to move to transfer the action to a United States Court outside the City of New York.

4. If the Contractor commences any action against the Contracting Party and/or the Authority in a court located other than in the City and State of New York, upon request of the Authority, the Contractor shall either consent to a transfer of the action to a court of competent jurisdiction located in the City and State of New York as above described or, if the court where the action is initially brought will not or cannot transfer the action the Contractor shall consent to dismiss such action without prejudice and may thereafter reinstitute the action in a court of competent jurisdiction in New York City as above-described.

## CHAPTER 9 - INSPECTION, TESTING AND GUARANTEES

**ARTICLE 9.01    INSPECTION**

A.    At all times during the Contract, the Engineer shall have the right to make the most thorough and minute inspection of the Work, including materials and their manufacture or preparation, and to draw the attention of the Contractor to all defects in workmanship or materials or other errors or variations from the Contract requirements.

B.    The right of inspection by the Authority herein provided is intended solely for the benefit of the Authority.  Neither the right of inspection nor any failure to draw attention to or point out such defects, errors or variations shall give the Contractor any right or claim against the Contracting Party or Authority or shall in any way relieve the Contractor from its obligations under the terms of the Contract.

C.    If the Work or any part thereof shall be found defective, the Contractor shall without cost to the Authority forthwith remedy such defect in a manner to comply with the Contract.

D.    The Contractor shall at all times provide the Engineer and his designated representatives all facilities necessary, convenient or desirable for inspecting the Work.  The Engineer and any designated representative shall be admitted any time without delay to any part of the Project and shall be permitted to inspect materials at any place or stage of their manufacture, preparation, shipment or delivery.

E.    Any inspection hereunder shall not unreasonably disrupt the Contractor's performance of the Work.

**ARTICLE 9.02    UNCOVERING FINISHED WORK**

The Engineer's right to make inspections shall include the right to order the Contractor to uncover or take down portions of finished work.  Should the work thus exposed or examined prove to be in accordance with the Contract, the uncovering or taking down and the replacing and the restoration of the parts removed will be treated as Extra Work for purpose of computing additional compensation and an extension of time; but should the work exposed or examined prove unsatisfactory, such uncovering, taking down, replacing and restoration shall be at the expense of the Contractor.  Such expenses shall also include repayment to the Authority for any and all expenses or costs incurred by it, including employees' salaries or otherwise, in connection with such uncovering, taking down, replacing and restoration.

**ARTICLE 9.03    TESTS**

A.    All tests required to be performed by Contractor shall be done as set forth in the Specifications and shall be made at the expense of the Contractor.

B.    The Engineer shall be apprised of all such tests in advance to be able to witness any such tests.

**ARTICLE 9.04      WARRANTY OF CONSTRUCTION**

A.   For a period of one year from the date of Substantial Completion, the Contractor warrants that the Work conforms to the Contract requirements and is free of any patent or latent defect of the material or workmanship.  Nothing in the above intends or implies that this warranty shall apply to work which has been abused or neglected by the Authority or the user of the structure upon which the Work is performed.

B.   Notwithstanding the foregoing, if the Special Conditions provide for Beneficial Use, the Contractor's warranty on that part of the Work for which a Beneficial Use Certification has been issued shall begin on the date of such certification.

C.   The warranty hereunder shall be in addition to whatever rights the Authority may have under law.  The Contractor's obligation under this warranty shall be, at its own cost and expense, promptly to repair or replace (including cost of removal and installation), that item (or part or component thereof) which proves defective or fails to comply with the Contract Documents within the warranty period such that it complies with the Contract Documents.

D.   In case the Contractor shall fail to repair or replace defective work in accordance with the terms of this warranty or if immediate repair or replacement of defective work is necessary, the Authority shall have the right to cause such repair or replacement to be made at the expense of the Contractor.  All such work performed by Authority employees shall be charged to the Contractor in accordance with the Authority's "Schedule of Rates For Services Rendered To Outside Parties" in effect at the time the repair or replacement is made.

E.   The warranty covering any defective work shall be reinstated for a period of one (1) year effective as of the date when the defect is remedied.  If the defect is found to have a significant effect on any other part, component or item, the reinstatement of the warranty shall then be extended to cover the part, component or item so affected as well, and shall start as of the date the interrelated parts, components and items function properly.  The warranty reinstatement provided for in this subparagraph shall apply only to the first replacement or repair of any such item, part and component and, in the case of a failure which has a significant effect on another part, component or item, to the first extension of the said warranty to such affected items, parts and components.

F.   All guarantees and warranties under this Contract are fully enforceable by the Authority acting in its own name.

**ARTICLE 9.05      SPECIFIC GUARANTEES**

Any additional guarantees and warranties required under the Contract are set forth in the **SPECIAL CONDITIONS**.

**ARTICLE 9.06      MANUFACTURER'S WARRANTIES AND GUARANTEES**

The Contractor shall obtain all manufacturers' warranties and guarantees of all equipment and materials required by this Contract in the names of the Authority and the Contracting Party and shall deliver same to the Authority; provided that the delivery of such manufacturers' warranties and guarantees shall in no respect relieve the Contractor of its obligation under the preceding provisions of this **CHAPTER**.

## CHAPTER 10 - MISCELLANEOUS PROVISIONS

### ARTICLE 10.01 NEW YORK STATE LABOR LAW

A. Contractor agrees that it will cause all persons employed upon the Work, including its subcontractors, agents, officers and employees, to comply with all applicable laws in the jurisdiction in which the Work is performed. It further agrees to comply with the requirements of the State Labor Law. More particularly, if any part of the Work falls within the purview of the State Labor Law, the Contractor agrees as to such part of the Work to comply therewith, including Sections 220, 220-a, 220-b, 220-d, 222-a and 223 thereof, as amended and supplemented. In conformity with such sections of the Labor Law, the Contractor agrees and stipulates that no laborer, worker, or mechanic in the employ of the Contractor, subcontractor or other person doing or contracting to do the whole or a part of the Work shall be permitted or required to work more than eight (8) hours in any one calendar day, nor more than five (5) days in any one week, except in cases of extraordinary emergency as defined in Section 220 of the Labor Law; and further that the wages to be paid for a legal day's work (as defined in Section 220) to all classes of such laborers, worker or mechanics upon the Work or upon any material to be used upon or in connection therewith shall be not less than the prevailing rate for a day's work (as defined in Section 220) and shall be paid in cash provided, however, that an employer may pay his employees by check after complying with the procedures prescribed in Section 220; and that each laborer, worker or mechanic employed by the Contractor or by any subcontractor or other person on, about, or upon the Work shall receive the wages and supplements provided for in said Section 220 of the Labor law.

B. The Contractor agrees to comply with the requirements of Section 222-a of the Labor Law, as amended and supplemented. The Contractor agrees that, where work is performed wherein a harmful dust hazard is created for which appliances or methods for the elimination of harmful dust have been approved by the board of standards and appeals, the Contractor shall install, maintain, and effectively operate such appliances and methods. The Contractor further agrees that, if the provisions of Section 222-a, as amended and supplemented, are not complied with, the Contract shall be void.

C. The schedule of wages and supplements required to be filed with the Authority by the New York City Comptroller prior to advertisement of this Contract in accordance with Section 220 (3) of the Labor Law is annexed hereto in the Appendix to this Contract and is hereby incorporated herein. The Contractor shall be fully responsible in connection with any changes or modifications in such rates or supplements, whether mandated by statute, judicial determination, union contracts, or otherwise, and in no event will the Contractor be entitled to additional compensation with respect to any such increases in wages and supplements which may go into effect during the life of this Contract. Where there are differences in City, State and Federal wage rates for a particular classification of work, they shall be resolved by applying the higher rates.

The Contractor and every Subcontractor hereunder shall post in a prominent and accessible place on the site of the Work a legible statement of all wage rates and supplements as specified in the

contract to be paid for the various classes of mechanics, worker, or laborers employed on the Work.

D.    Before any payments will be made under this contract, the Contractor and all Subcontractors performing any part of the Work shall file in the office of the Chief Fiscal Officer of the Contracting Party verified statements provided for in Section 220-a of the Labor Law, certifying to the amounts then due and owing from the Contractor and subcontractors for daily or weekly wages or supplements on account of labor performed upon the Work under this Contract, and setting forth therein the names of the persons whose wages or supplements are unpaid and the amount due to each respectively.  The Contractor shall set forth in his statement the names of all its Subcontractors and each Subcontractor shall likewise in his statement set forth names of its Subcontractors.  If the Contractor or Subcontractor has no subcontractor, it shall so state in his statement.  If there is nothing due and owing to any laborer for daily or weekly wages or supplements on account of labor performed, verified statements to that effect shall be filed by the Contractor and all Subcontractors before any payments are made under this Contract.  The statements required shall be verified by the oath of the contractor or subcontractor as the case may be that it has read such statement subscribed by it and knows the contents thereof, and that the same is true of its own knowledge.

The Chief Fiscal Officer may deduct, from any amount certified under this contract to be due to the Contractor, the sum or sums admitted in the aforesaid statements to be due and owing on account of the aforesaid daily or weekly wages or supplements, as provided in Section 220-b of the Labor Law.

E.    If this Contract shall fall within the purview of the provisions of Chapter 615 of the Laws of 1922, known as the Workers' Compensation Law, and acts amendatory thereof, it shall be void and of no effect unless the person or corporation making or performing the same shall secure compensation for the benefit of, and keep insured during the life of this contract the employees engaged thereon, in compliance with the provisions of said Law.

Continued on Next Page

F.  The Contractor shall keep a record card of every employee engaged in the performance of the Work under this Contract whether employed by the Contractor or by a Subcontractor, on which shall be given:

Contract _____

Project and Location _____

Employee's Name _____ Payroll or Badge No _____

Employee's Address _____

Title of position _____ Hourly Wage $ _____

Classification _____ Fringe Benefits _____
              (Journeyman, Reg. Apprentice, Etc.)

Resided in N.Y. State since _____

Where born _____

Naturalized _____
         (Date)         (Court)         (Location)

Employed by _____
         (To be signed by Contractor's representative)

Said cards shall be kept in the office of the Contractor and shall be available for inspection by duly authorized representatives of the Authority during business hours of the day. If required, the Contractor shall file with the Authority the above information on duplicate cards to be furnished by the Contractor.

The Contractor shall also submit to the Authority the completed weekly payroll report forms issued by the office of the Comptroller and furnished by the Authority. However, on Federally funded projects or where the Contractor produces a computerized payroll printout, the Contractor may, with the permission of the Authority, submit the same payroll information on Federal regulation forms or copies of his computerized payroll in lieu of the payroll report forms issued by the Comptroller.

## ARTICLE 10.02     EQUAL EMPLOYMENT OPPORTUNITIES FOR MINORITY GROUP MEMBERS AND WOMEN

A.  The Contractor will not discriminate against employees or applicants for employment because of race, creed, color, national origin, sex, age, disability or marital status, and will undertake or continue existing programs of affirmative action to ensure that minority group members and women are afforded equal employment opportunities without discrimination. For purposes of

this Article "affirmative action" shall mean recruitment, employment, job assignment, promotion, upgradings, demotion, transfer, layoff, or termination and rates of pay or other form of compensation.

B.   At the request of the Authority, the Contractor shall request each employment agency, labor union, or authorized representative of workers with which it has a collective bargaining or other agreement or understanding to furnish a written statement that such employment agency, labor union or representative will not discriminate on the basis of race, creed, color, national origin, sex, age, disability or marital status and that such union or representative will affirmatively cooperate in the implementation of the Contractor's obligations herein.

C.   The Contractor shall state, in all solicitations or advertisements for employees, that, in the performance of this Contract, all qualified applicants will be afforded equal employment opportunities without discrimination because of race, creed, color, national origin, sex, age, disability or marital status.

D.   The Contractor will include the provision of paragraphs (a), (b) and (c), above, in every subcontract in such a manner that the provisions will be binding upon each subcontractor as to work in connection with this Contract.

E.   The requirements of this Article shall not apply to any employment outside New York State or application for employment outside New York State or solicitations or advertisements therefor, or any existing programs of affirmative action regarding employment outside New York State.

## ARTICLE 10.03     ANTITRUST ASSIGNMENT

The Contractor hereby assigns, sells and transfers to the Contracting Party all right, title and interest in and to any claims and causes of action arising under the antitrust laws of New York State or of the United States relating to the particular goods or services purchased or procured by the Authority under this Contract.

## ARTICLE 10.04     PATENTS, COPYRIGHTS AND INFRINGEMENT CLAIMS

A.   All inventions, ideas, designs and methods contained in the Contract Documents in which the Authority has, or acquires patent, copyright or other related intellectual property rights (hereinafter referred to as patents or patentable subject matter) shall remain reserved for the exclusive use of the Authority and may not be utilized, reproduced or distributed by or on behalf of the Contractor, or any employee, subcontractor or agent without the written consent of the Authority except to the extent necessarily required in connection with performance of the Work.

B.   If, pursuant to performance of the Work, the Contractor or any of its agents, officers, employees or subcontractors shall produce any patentable subject matter, the Authority, the Contracting Party and their respective subsidiaries shall thereupon have, without cost or expense, an irrevocable, non-exclusive, royalty-free license to make, have made or use, either themselves or by another contractor or other party on their behalf, such subject matter in connection with any work or any activity now or hereafter undertaken by or on behalf of the Authority, the

Contracting Party or any of their respective subsidiaries. The license herein granted shall not be transferable and shall not extend to contractors or other parties except to the extent of their work or activity on behalf of the Authority, the Contracting Party or their subsidiaries.

C.    All drawings, parts lists, data, and other papers of any type whatsoever, whether in the form of writing, figures or delineations, which have been or may be received from the Contractor at any time either prior or subsequent to execution of the Contract and which are prepared in connection with the Contract and submitted to the Authority shall become the property of the Authority. Except to the extent that rights are held by Contractor or others under existing valid patents and are not given to the Authority, the Authority shall have the right to use or permit the use of all such drawings, data, and other papers, and also any oral information of any nature whatsoever received by the Authority, and any ideas or methods represented by such papers and information, for any purposes and at any time without other compensation than that specifically provided herein, and no such papers or information shall be deemed to have been given in confidence and any statement or legend to the contrary on any of said drawings, data, or other papers shall be void and of no effect.

D.    The Contractor shall be liable and responsible for any claims made against the Indemnified Parties for any infringements of patents by the use or supplying of patented tools, articles, appliances, structures, materials, devices, applications, methods, ways, processes or any other patent in the performance or completion of the Work or by the use of any process or method connected with the Work or by the use of any materials used upon the Work, except to the extent that a claim results from the Contractor's use of a material or product specifically required by the Authority in the Specifications. The Contractor shall save harmless and indemnify the Indemnified Parties from and against all costs, expenses and damages which any of them shall incur or be obligated to pay by reason of any such infringement or claim of infringement, and shall, at the election of the Authority, defend at the Contractor's sole expense all such claims in connection with any alleged infringement.

E.    If the Authority be enjoined from using any portion of the Work as to which the Contractor is to indemnify the Authority against patent claims, the Authority may at its option and without thereby limiting any other right it may have hereunder or at law or in equity, require the Contractor to supply at its own expense, temporarily or permanently, facilities not subject to such injunction and not infringing any patent and if the Contractor shall fail to do so, the Contractor shall, at its expense, remove such offending facilities and refund the cost thereof to the Authority or take such steps as may be necessary to ensure compliance by the Authority with such injunction, to the satisfaction of the Authority.

F.    The Contractor is responsible to determine whether a prospective Supplier or Subcontractor is a party to any litigation involving patent infringement, trademark, antitrust or other trade regulation claims or is subject to any injunction which may prohibit it under certain circumstances from selling equipment to be used or installed under this Contract. The Contractor enters into any agreement with a party to such litigation at his own risk and the Contracting Party and the Authority will not undertake to determine the merits of such litigation. The Contracting Party and the Authority, however, reserve the right to reject any article which is the subject of such

litigation or injunction when in their judgment use of such article as a result of such circumstances would delay the Work or be unlawful.

**ARTICLE 10.05     RELATIONSHIP BETWEEN CONTRACTING PARTY OR AUTHORITY AND OTHERS**

Nothing contained herein shall be deemed to give any third party any claim or cause of action against the Contracting Party or Authority beyond such as may otherwise exist without regard to this Contract.

**ARTICLE 10.06     AUDIT AND INSPECTION**

The Contractor shall permit authorized representatives of the Authority, Contracting Party, Government, State or City to inspect and review all of Contractor's work, materials, payrolls, records of personnel, invoices of materials and other relevant construction, equipment, data and records, and to audit the books and records pertaining to the Project or Contract.

**ARTICLE 10.7     INDEPENDENT CONTRACTOR**

The Contractor agrees that, in accordance with its status as an independent contractor, it will conduct itself with such status, that it will neither hold itself out as nor claim to be an officer or employee of the Authority, Contracting Party, State or City, by reason hereof, and that it will not by reason hereof make any claim, demand or application to or for any right or privilege applicable to an officer or employee of the Authority, Contracting Party, State or City, including, but not limited to, Worker's Compensation coverage, Unemployment Insurance benefits, Social Security coverage or Retirement membership or credit.

**ARTICLE 10.08     GENERAL REPRESENTATIONS AND WARRANTIES**

In order to induce the Authority to enter into and perform this Contract, Contractor represents and warrants to the Authority that:

A.     <u>Existence; Compliance with Law</u>  The Contractor (i) is duly incorporated, organized, validly existing and in good standing as a corporation under the laws of the jurisdiction of its incorporation and is duly qualified and in good standing under the laws of each jurisdiction where its ownership, lease, or operation of property in the conduct of its property or business requires, and (ii) has the power and authority and the legal right to conduct the business in which it is currently engaged and to enter into this Contract.

B.     <u>Authority</u>  The Contractor has full power, authority and legal right to execute, deliver and perform the Contract to which it is a party.  The Contractor has taken all necessary action to authorize the execution, delivery and performance of the Contract.

C.     <u>No Legal Bar</u>  The execution, delivery and performance of the Contract do not and will not violate any provision of any existing law, regulation, or of any order, judgment, award or decree of any court or government or of the charter or by-laws of the Contractor or of any mortgage, indenture, lease, contract, or other agreement or undertaking to which the Contractor is a party or

by which the Contractor or any of its properties or assets may be bound, and will not result in the creation or imposition of any lien on any of its respective properties or assets pursuant to the provisions of any such mortgage, indenture, lease, contract or other agreement or undertaking.

D. <u>No Litigation</u>  Except as specifically disclosed to the Authority in writing prior to the date hereof, no claim, litigation, investigation or proceeding of or before any court, arbitrator or governmental authority is currently pending nor, to the knowledge of the Contractor, is any claim, litigation or proceeding threatening against the Contractor or against its properties or revenues (i) which involves a claim of defective design or workmanship in connection with any contract entered into by the Contractor or (ii) which, if adversely determined, would have an adverse effect on the business, operations, property or financial or other condition of the Contractor.  For purposes of this paragraph, a claim, litigation, investigation or proceeding may be deemed disclosed to the Authority if the Authority has received, prior to the date hereof, detailed information concerning the nature of the matter involved, the relief requested, and a description of the intention of the Contractor to controvert or respond to such matter.

E. <u>No Default</u>  The Contractor is not in default in any respect in the payment or performance of any of its obligations or in the performance of any mortgage, indenture, lease, contract or other agreement or undertaking to which it is a party or by which it or any of its properties or assets may be bound, and no such default or Event of Default (as defined in any such mortgage, indenture, lease, contract, or other agreement or undertaking) has occurred and is continuing or would occur solely as a result of the execution and performance of this Contract.  The Contractor is not in default under any order, award, or decree of any court, arbitrator, or government binding upon or affecting it or by which any of its properties or assets may be bound or affected, and no such order, award or decree would affect the ability of the Contractor to carry on its business as presently conducted or the ability of the Contractor to perform its obligations under this Contract or any of the other financing to which it is a party.

F. <u>No Inducement or Gratuities</u>

1. Contractor warrants that no person or selling agency has been employed or retained to solicit or secure this Contract upon any agreement or understanding for a commission, percentage, brokerage, or contingent fee, excepting bona fide employees or bona fide established commercial or selling agencies maintained by Contractor for the purpose of securing business.

2. Additionally, Contractor warrants that no inducements (in the form of entertainment, gifts, offers of employment, or any other thing of value) or gratuities have been offered or given or will be offered or given to any official or employee of the Authority (including individuals who were recent employees of the Authority).  The Contractor further warrants that during the term of the contract it shall not make any offers of employment of any Authority employee, or solicit or interview therefor, without obtaining the written approval of the employee's Department Head.

3. For breach or violation of the foregoing warranties, the Authority shall have the right to cancel the Contract without liability or, at its discretion, to deduct from the Total Contract

Price or otherwise to recover the full amount of such commission, percentage, brokerage or contingent fee, or gratuities, and to include the occurrence of such a breach or violation in assessments of the Contractor's responsibility in future bids.

## ARTICLE 10.09    PROHIBITION ON PURCHASE OF TROPICAL HARDWOODS

A.  Except as hereinafter provided, New York State Finance Law Section 165, prohibits public benefit corporations (the Authority) from requiring or permitting the use of tropical hardwood or wood product.

B.  The provisions of this Article shall not apply where the Contracting Officer finds that:

1.  no person or entity doing business in the state is capable of performing the Contract using acceptable non-tropical hardwood species; or

2.  the restriction would violate the terms of a grant to the Authority from the Federal Government; or

3.  the use of tropical woods is deemed necessary for purposes of historical restoration and there exists no available acceptable non-tropical wood species.

C.  As used in this **ARTICLE**:

1.  "Non-tropical hardwood species" shall mean any and all hardwood that grows in any geographically temperate regions, as defined by the United States Forest Service, and is similar to tropical hardwood in density, texture, grain, stability or durability. Non-tropical hardwood, the use or purchase of which is preferred under this Article, shall include, but not be limited to those species listed in New York State Finance Law Section 165, paragraph 1.

2.  "Tropical hardwood" shall mean any and all hardwood, scientifically classified as angiosperme that grows in any tropical moist forest. A list of tropical hardwoods is found in New York State Finance Law Section 165, paragraph 1.

3.  "Tropical rain forests" shall mean any and all forests classified by the scientific term "tropical moist forests," the classification determined by the equatorial region of the forest and average rainfall.

4.  "Tropical wood products" shall mean any wood products, wholesale or retail, in any form, including but not limited to veneer, furniture, cabinets, paneling moldings, doorskins, joinery, or sawnwood, which are composed of tropical hardwood except plywood.

## ARTICLE 10.10     OMNIBUS PROCUREMENT ACT OF 1992

A.    In compliance with the New York State Omnibus Procurement Act of l992, if the Gross Sum Bid or the Lump Sum enumerated in the Bid is equal to or greater than one million dollars, this Article shall apply to this Contract:

1.    If this Contract is awarded in an amount equal to or greater than one million dollars, the Contractor will be required to document its efforts to encourage the participation of New York State business enterprises as Suppliers and Subcontractors by showing that the Contractor has:

a.    solicited bids, in a timely and adequate manner, from New York State business enterprises including certified minority and women-owned business;

b.    contacted the New York State Department of Economic Development to obtain listings of New York State business enterprises;

c.    placed notices for Subcontractors and Suppliers in newspapers, journals and other trade publications distributed in New York State; or

d.    participated in bid outreach conferences.

2.    If the Contractor determines that New York State business enterprises are not available to participate on the Contract as Subcontractors or Suppliers, the Contractor shall provide a statement indicating the method by which such determination was made.    If the Contractor does not intend to use Subcontractors, the Contractor shall provide a statement verifying such.

3.    If this Contract is awarded in an amount equal to or greater than one million dollars, the Contractor will be required to notify New York State residents of employment opportunities through listing any such positions with Community Services Division of the New York Department of Labor, or providing for such notification in such manner as is consistent with existing collective bargaining contracts or agreements.

## ARTICLE 10.11     COMPLIANCE WITH LAWS, RULES AND REGULATIONS

The Contractor and any subcontractor must comply with all local, State and Federal laws, rules and regulations applicable to this contract and to the Work to be done hereunder, whether or not referenced in the Contract Documents.

## ARTICLE 10.12     GRAND JURY TESTIMONY

A.    Upon refusal of the Contractor as an individual or as member, partner, director or officer of the Contractor, if the Contractor be a firm, partnership or corporation, when called before a grand jury, governmental department, commission, agency or any other body which is empowered to compel the attendance of witnesses and examine them under oath, to testify in an investigation or

to answer any relevant questions concerning any transaction or contract entered into with the State, or any political subdivision thereof, or a public authority or with any public department, agency or official of the State or any political subdivision thereof, when immunity has been granted to the witness against subsequent use of such testimony, or any evidence derived therefrom in any subsequent criminal proceeding:

1.   Such individual, or any firm, partnership or corporation of which he is a member, partner, director or officer shall be disqualified for a period of five (5) years after such refusal from submitting bids for, or entering into or obtaining any contracts, leases, permits or licenses with the City, the MTA or the Authority or submitting bids for or entering into, or obtaining any contracts, leases, permits or licenses which will be paid out of any monies under the control of or collected by the City, the MTA, the Authority and/or shall be subject to such other action appropriate under the circumstances; and

2.   this Contract and any and all such existing contracts, leases, permits or licenses made with or obtained by any such individual or with or by the firm, partnership, or corporation of which he/she is a member, partner, director or officer may be cancelled or terminated by the City, the MTA or the Authority or the contracting agency or be subject to such action appropriate under the circumstances thereto without incurring any penalty or damages on account of such cancellation or termination, but any monies owing for goods delivered, work done, or rentals, permit or license fees due, prior to the cancellation or termination, shall be paid.

## ARTICLE 10.13    COMPLIANCE WITH SECTION 1269-g OF THE PUBLIC AUTHORITIES LAW

A.   The Contractor and its Subcontractors shall comply fully with Section 1269-g of the Public Authorities Law.

B.   No later than ninety (90) days from the Award Date, the Contractor shall file with the Engineer a certification signed by an officer of Contractor and sworn to under the penalties of perjury that the Contractor has posted and distributed the information specified in Section 1269-g(2) in the manner required by Section 1269-g(1). Section 1269-g(1) requires contractors and subcontractors to (a) post the required information in one or more conspicuous places at each major workplace site where persons working on the project (including persons working for a subcontractor) are most likely to see it; (b) post the required information on its internet and intranet Web site (if it has one) or provide a conspicuous hyperlink (labeled "Protections for Reporting Fraud In New York") to the applicable part of the MTA's Web site; and (c) distribute the required information to persons, including employees and managers, who work on the project by including it in an employee handbook or by sending an e-mail.

C.   The MTA has posted on its Web site, www.mta.info, a page providing the information specified in Section 1269-g(2), and also a sample statement. Posting and distributing that statement in the manner required by Section 1269-g(1) will satisfy the Contractor's disclosure obligations under Section 1269-g.

D.   The Contractor shall insert into every first-tier subcontract, and require the insertion into any lower-tier subcontract, a provision requiring each Subcontractor to comply with Section 1269-g, and requiring each Subcontractor, no later than ninety (90) days from the effective date of each subcontract, to file with the Contractor a certification signed by an officer of such Subcontractor and sworn to under the penalties of perjury that such Subcontractor has posted and distributed the information specified in Section 1269-g(2) in the manner required by Section 1269-g(1).  In complying with their disclosure obligations, Subcontractors may also rely on the sample statement posted by the MTA on its Web site.

E.   No later than ninety (90) days from the effective date of each subcontract of any tier, the Contractor shall file with the Engineer a copy of the Subcontractor's certification filed with it pursuant to the preceding paragraph.

F.   Material compliance by the Contractor with these provisions of the Contract and with Section 1269-g shall be a material condition of payment.  The Contractor shall insert into every first-tier subcontract, and require the insertion into all lower-tier subcontracts, a provision stating that material compliance by a Subcontractor with Section 1269-g shall be a material condition of payment under such subcontract.  Each request for payment submitted by the Contractor shall include a certification signed by an officer of the Contractor and sworn to under penalties of perjury certifying that (i) the Contractor has continued to comply with the requirements of Section 1269-g, and (ii) each of its Subcontractors has filed the certification as required by Paragraphs D. and E., above, and, based thereon, has continued to comply with the requirements of Section 1269-g.

## ARTICLE 10.14     ASIAN LONGHORNED BEETLE

A.   Any work under this Contract, whether performed by the Contractor or any of its subcontractors, that involves the handling or removal of any "host material" originating from within the Asian Longhorned Beetle ("ALB") quarantine zone, as defined by New York State Department of Agriculture and Markets ("NYSDAM"), must be performed: (1) in accordance with federal, state and local laws and regulations regarding the eradication of the ALB, including Part 139 of the New York State Agriculture and Markets Law ("NYS AML"); and (2) by a Contractor (or subcontractor) that is certified by NYSDAM, to perform such work.  Copies of such certification must be provided to the Authority before any work involving host material is commenced.

1.   "Host material" generally includes all firewood (of hardwood species) and trees, logs, green lumber, stumps, roots, branches (whether living, cut or dead) that is one-half inch or more in diameter and one of the trees listed in NYS AML Part 139.3.

B.   Prior to the handling or disposal of any host material within the quarantine zone, an NYSDAM-certified person must perform an inspection for the presence of ALB infestation.

1.   If an ALB infestation is detected, then all work related to the handling or disposal of that host material must cease and the Contractor shall immediately contact the Project Manager for further action.  Work involving the infested host material may not restart until written notification to proceed is received from the Project Manager.

2.      If no ALB infestation is detected, then the host material, if living, may be left untouched. If the host material was discovered cut, dead or to be removed, it must be handled or disposed of pursuant to the regulations set forth by NYSDAM.

## ARTICLE 10.15        CONTRACT DOCUMENTS CONTAIN ALL TERMS

These Contract Documents contain all the terms and conditions agreed upon by the parties hereto, and no other agreement, oral or otherwise, regarding the subject matter of this Contract shall be deemed to exist or to bind any of the parties hereto, or to vary any of the terms contained herein.

## ARTICLE 10.16        ALL LEGAL PROVISIONS INCLUDED

It is the intent of the parties that each and every provision of law required to be inserted in this Contract should be and is inserted herein.  Every such provision is to be deemed to be inserted herein, and if any such provision is not inserted or is not inserted in correct form, then this contract shall be deemed amended by such insertion so as to comply strictly with the law and without prejudice to the rights of either party hereunder.

## ARTICLE 10.17        DETERMINATIONS REGARDING AMBIGUITIES AND ORDER OF PRECEDENCE

A.      If this Contract contains any errors, inconsistencies, ambiguities, or discrepancies, including typographical errors, the Contractor shall request a clarification of same by requesting a determination by the Engineer.

B.      If there is a conflict between provisions of the Contract Documents, upon request for a determination by the Engineer, the following order of precedence shall generally apply:

1.      The Addenda, if any
2.      The Information For Bidders Data Sheet
3.      The Special Conditions
4.      The Information for Bidders section and the Contract Terms and Conditions
5.      The Contract Drawings and Specifications (These documents complement each other – see **Specification Section 1B1.1 - SPECIFICATIONS AND CONTRACT DRAWINGS TO COMPLEMENT EACH OTHER** and the article **CLARIFICATION OF CONTRACT DRAWINGS** herein)
6.      The Appendix, except that items contained in the Appendix having the force of law are not deemed superseded by anything to the contrary contained in items 1 through 5, above.

C.      Nothing in this **ARTICLE** is intended to supersede the certifications, representations and statements contained in the Bid.

**ARTICLE 10.18      SEVERABILITY**

If this Contract contains any provision found to be unlawful, the same shall be deemed to be of no effect and shall be deemed stricken from the Contract without affecting the binding force of the Contract as it shall remain after omitting such provision.

**ARTICLE 10.19      SURVIVAL**

In addition to any provision expressly set forth as surviving the expiration or termination of this Contract, any provision of this Contract whose purpose would be defeated or rendered meaningless by the expiration or earlier termination hereof shall be deemed to survive any such expiration or termination.

**ARTICLE 10.20      DIESEL EMISSION REDUCTION ACT**

If included in the **APPENDIX**, **SCHEDULE Y** regarding the Diesel Emissions Reduction Act, shall be deemed as included in the Contract Terms & Conditions. If the **INFORMATION FOR BIDDERS DATA SHEET** contains a Special Condition that includes additional diesel emission requirements, then the more stringent requirements from **SCHEDULE Y** or the Special Condition shall govern.

## CHAPTER 11 - FEDERAL PROVISIONS

### ARTICLE 11.01        FEDERALLY REQUIRED PROVISIONS

This Contract is subject to the provisions contained in **SCHEDULE D, FEDERAL CONTRACT PROVISIONS**, attached and incorporated herein by reference.

### ARTICLE 11.02        DRUG AND ALCOHOL TESTING

**SCHEDULE X, FEDERAL DRUG AND ALCOHOL TESTING REQUIREMENTS,** applies to this Contract when the **INFORMATION FOR BIDDERS DATA SHEET** indicates that the Authority believes that "Safety-Sensitive Functions" (as defined in 49 CFR Part 655) are involved in this Contract.

[END OF SECTION]

**CONTRACT NO.:** _____

In WITNESS WHEREOF, this Contract has been executed by both the NEW YORK CITY TRANSIT AUTHORITY and _____, the CONTRACTOR*, on the day and year indicated on the applicable "Acknowledgment" documents. The CONTRACTOR, if a corporation, has also affixed its seal to this instrument on the day and year indicated on the "Acknowledgment for the CONTRACTOR" document.

THE NEW YORK CITY TRANSIT AUTHORITY

by: _____
Assistant Chief Procurement Officer

THE CONTRACTOR

_____ (Seal)
Exact Name of Contractor

by: _____

Title: _____

*The Contractor, if a partnership or corporation, must execute this Contract in the exact firm or corporate name as it appears in its partnership agreement or certificate of incorporation. If the Contractor is a corporation and this Contract is executed by an Officer other than the President or Vice President, the Contractor shall furnish a certified copy of by-laws or a resolution authorizing said Officer to sign, unless same has previously been furnished to the Authority. If the Contractor is a joint venture, and an individual executes this Contract on behalf of more than one member of the joint venture, documentation shall be furnished establishing such individual's authority to bind each such member.

## ACKNOWLEDGMENT FOR THE AUTHORITY

STATE OF NEW YORK,          )
                                ) SS.:
COUNTY OF                      )

On this _____ day of _____ 20_____ , before me personally

appeared _____ to me known, who, being by me

first duly sworn, did depose and say:  That he/she is the _____ of the New York City Transit Authority, the public benefit corporation described in and which executed the foregoing instrument and that he/she acknowledged to me that he/she signed his/her name thereto pursuant to the authorization of said Authority.

_____
Notary Public

## ACKNOWLEDGMENT FOR CONTRACTOR

STATE OF                  )
                           ) SS.:
COUNTY OF              )

On this _____ day of _____ 20___, before me personally appeared _____, known to me to be the person who executed the foregoing instrument, who, being duly sworn by me did depose and say that s/he resides at _____, in the City of _____ , in the County of _____, in the State of _____; and further that s/he:

*[Mark an **X** in the appropriate box and complete the accompanying statement.]*

☐ (*If an individual*): executed the foregoing instrument in her/his name and on her/his own behalf.

☐ (*If a corporation*): is the _____ of _____, the corporation in said instrument; that, by authority of the Board of Directors of said corporation, s/he is authorized to execute the foregoing instrument on behalf of the corporation for the purposes set forth therein; and that, pursuant to that authority, s/he executed the foregoing instrument in the name of and on behalf of said corporation as the act and deed of said corporation.

☐ (*If a partnership*): is the _____ of _____, the partnership described in said instrument; that, by the terms of said partnership s/he is authorized to execute the foregoing instrument on behalf of the partnership for the purposes set forth therein; and that, pursuant to that authority, s/he executed the foregoing instrument in the name of and on behalf of said partnership as the act and deed of said partnership.

☐ (*If a limited liability company*): is a duly authorized member of _____ LLC, the limited liability company described in said instrument; that, s/he is authorized to execute the foregoing instrument on behalf of the limited liability company for the purposes set forth therein; and that, pursuant to that authority, s/he executed the foregoing instrument in the name of and on behalf of said limited liability company as the act and deed of said limited liability company.

_____
Notary Public