UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x
                             :

YORKSHIRE TOWERS COMPANY L.P., *et*    :     13 CIV 1757 (JMF)
*ano.*                                        :

                      *Plaintiffs,*      :

              - against -            :

UNITED STATES DEPARTMENT OF         :
TRANSPORTATION, *et al.,*               :

                      *Defendants.*     :

------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF
## MTA DEFENDANTS' MOTION TO DISMISS

Bryan Cave LLP
1290 Avenue of the Americas
New York, New York  10104

Gordon J. Johnson
Deputy General Counsel
Metropolitan Transportation Authority
347 Madison Avenue – 9th Fl.
New York, NY  10017

John C. Abili
Deputy General Counsel
MTA Capital Construction
2 Broadway – 8th Floor
New York, NY 10004

*Attorneys for Metropolitan Transportation
Authority, Fernando J. Ferrer in his capacity
as its Acting Chairman, New York City Transit
Authority, Thomas F. Predergast, Jr. in his
capacity as its President, Metropolitan
Transportation Authority Capital Construction
Company, and Michael Horodniceanu in his
capacity as its President*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................ 1

FACTUAL STATEMENT ...................................................................................... 3

    A.    The FEIS and Record of Decision Were Issued in 2004. ........................... 4

    B.    After the FEIS, MTA Identified Construction Difficulties with the Originally Proposed Location of the E. 86th Street Entrance..................... 5

    C.    MTA Identified the E. 86th Street Alternatives. .......................................... 5

    D.    The SEA Assessed the Environmental Impacts of the Alternatives. .......... 6

    E.    MTA Engaged In Extensive Public Outreach As To The Change In The Design of the 86th Street Subway Station. ........................................... 7

    F.    FTA Issued the FONSI on October 29, 2009. ............................................. 7

    G.    FTA Published Notice of the FONSI on December 9, 2009. ...................... 8

    H.    YT Initiated NEPA Litigation In This Court To Require an SEIS For The E. 86th Street Subway Entrance. ........................................................... 8

    I.    This Court Dismissed YT's NEPA Litigation. ........................................... 9

    J.    YT's Amended Complaint In This NEPA Litigation Raises The Same Claim Litigated In The Previous NEPA Litigation.................................. 10

POINT I    YT'S CLAIM IS BARRED BY CLAIM AND ISSUE PRECLUSION .. 13

    A.    Claim Preclusion Bars The Claim In The Amended Complaint............... 13

    B.    Issue Preclusion Bars The Claim In The Amended Complaint ................ 18

POINT II    YT'S CLAIM IS BARRED BY THE STATUTE OF LIMITATIONS, THE NEPA REGULATIONS AND WAIVER....................................... 20

CONCLUSION................................................................................................. 25

# TABLE OF AUTHORITIES

## CASES

Alaska Forest Association v. Vilsack, 883 F. Supp. 2d 136 (D.D.C. 2012).....................17

Allen v. McCurry, 449 U.S. 90 (1980) ............................................................................14

Chambers v. Time Warner, Inc., 282 F.3d 147 (2d Cir. 2002)...........................................3

Cortec Industrial, Inc. v. Sum Holding L.P., 949 F.2d 42 (2d Cir. 1991) ..........................3

Day v. Moscow, 955 F.2d 807 (2d Cir. 1992) .................................................................13

Friends of the River v. FERC, 720 F.2d 93 (D.C. Cir. 1983)...........................................23

Fund for Animals, Inc. v. Lujan, 794 F. Supp. 1015 (D. Mont. 1991) .............................17

Gertskis v. U.S. E.E.O.C., 11 Civ. 5830, 2013 WL 1148924 (S.D.N.Y. March 20,
    2013) ......................................................................................................................13, 15

Highway Citizens Group v. U.S. Department of Transportation, 456 F.3d 734
    (7th Cir. 2006).............................................................................................................17

In re Indu Craft, Inc., 11 Civ. 5996, 2012 WL 3070387 (S.D.N.Y. July 27, 2012) ....18, 19

International Audiotext Network, Inc. v. AT&T Co., 62 F.3d 69 (2d Cir. 1995) ...............3

Mahmood v. Research in Motion LTD, 12 Civ. 899, 2012 WL 5278470
    (S.D.N.Y. Oct. 25, 2012) .......................................................................................13, 14

Marsh v. Ore. Natural Resources Council, 490 U.S. 360 (1989) ......................................22

Matusovsky v. Merrill Lynch, 186 F. Supp. 2d 397 (S.D.N.Y. 2002) ................................3

Michaelesco v. Estate of Richard, 355 Fed. Appx. 572, 2009 WL 4724638 (2d
    Cir. 2009).................................................................................................................14, 16

Monahan v. N.Y. City Department of Corrections, 214 F.3d 275 (2d Cir. 2000).......13, 14

Montana v. United States, 440 U.S. 147 (1979)..........................................................18, 19

NLRB v. United Technologies Corp., 706 F.2d 1254 (2d Cir. 1983) ...............................14

North Idaho Community Action Network, 545 F.3d 1147 (9th Cir. 2008)....................9, 23

PRC Harris, Inc. v. Boeing Co., 700 F.2d 894 (2d Cir. 1983)...........................................14

Rapoport v. Asia Electronics Holding Co., 88 F. Supp. 2d 179 (S.D.N.Y. 2000)...............3

Wilder v. Thomas, 854 F.2d 605 (2d Cir. 1988)........................................................19, 20

Yorkshire Towers Co. v. U.S. Depart. of Transp., 11 Civ. 1058, 2011 WL
    6003959 (S.D.N.Y. Dec. 1, 2011)....................................................................*passim*

## OTHER AUTHORITIES

23 C.F.R. § 771.130(a)............................................................................9, 20, 22

23 U.S.C. § 139(l)(1) ..........................................................................................9, 21

28 U.S.C. § 1738............................................................................................................19

42 U.S.C. §§ 4321-4370h ...............................................................................................1

John W. Fischer, Cong. Research Serv., RL33119, Safe, Accountable, Flexible,
    Efficient Transportation Equity Act – A Legacy for Users (2005) .........................21

Moving Ahead for Progress in the 21st Century Act, Pub. Law 112-141 § 1308.............21

National Environmental Policy Act, 42 U.S.C. §§ 4321-4370h...............................*passim*

Notice of Limitation on Claims Against Proposed Public Transportation Projects,
    74 Fed. Reg. 65,203 (Dec. 9, 2009) .....................................................................8, 21

## PRELIMINARY STATEMENT

On October 29, 2009, the Federal Transit Administration ("FTA") issued a Finding of No Significant Impact (the "FONSI") under the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-4370h, based on, *inter alia*, a Supplemental Environmental Assessment dated May 2009 (the "SEA") and FTA's evaluation of the comments made at a public hearing in June 2009.  The FONSI determined that the new subway station entrance on E. 86th Street will not result in significant adverse environmental impacts that warrant preparation of a Supplemental Environmental Impact Statement ("SEIS").  This lawsuit seeks to overturn that determination, alleging that: (i) contrary to FTA's conclusions in the FONSI, the FTA-approved station design will endanger pedestrians and result in other environmental impacts; and (ii) a new alternative design developed by Yorkshire Towers ("YT") is superior to the design FTA approved in 2009 and should be studied in an SEIS.

This Court rejected these same arguments in the prior NEPA litigation between the parties. *See* Yorkshire Towers Co. v. U.S. Depart. of Transp., 11 Civ. 1058, 2011 WL 6003959 (S.D.N.Y. Dec. 1, 2011) (Griesa, J.).[1]  YT initially appealed this Court's decision, but it subsequently withdrew its appeal, which was then dismissed with prejudice on April 30, 2012, ending that litigation.

In the prior litigation, YT – wielding affidavits from the same advisors cited in the Amended Complaint – put forward virtually the same contentions with respect to the alleged environmental impacts of the same FTA-approved subway station entrance.  In the prior litigation, YT also touted a new design for the subway entrance

---

[1]     The pleadings and other pertinent filings in the prior lawsuit are re-submitted to the Court as exhibits to the Declaration of Philip E. Karmel filed herewith.

(albeit a different new design than the one it is now proposing).  This Court dismissed YT's prior lawsuit, holding that its claims were barred by the 180-day statute of limitations to challenge the FONSI.  The Court also held that "defendants would be prejudiced if the court tolls the statute of limitations....  Defendants apparently relied on the finality of the FONSI and are now in the process of constructing the subway entrances in front of Yorkshire Towers." Id. at *5.

This Court also held that under the applicable NEPA regulations, as well as the doctrine of "waiver," FTA is not required to prepare an SEIS to study a new alternative proposed after issuance of the FONSI.  Id. **5-6.  The Court in the prior litigation declined to grant YT's request for leave to amend its complaint.  Id. *7.

The new lawsuit now before this Court – which is once again founded on YT's contention that the NEPA process must be re-opened to study a new alternative proffered by YT – is a retread of claims already litigated, and should be dismissed.

*First,* the doctrine of *res judicata* (claim preclusion) and collateral estoppel (issue preclusion) preclude YT's effort to re-litigate its NEPA contentions challenging the E. 86th Street subway station entrance.  This Court has already rejected those allegations as time barred and ruled that NEPA does not require an SEIS for a new and belatedly proposed alternative.  The Amended Complaint is a blatant attempt to relitigate those issues.  It criticizes this Court's decision in the prior litigation as having been founded upon a "disingenuous paraphrase of the plain text of [the applicable regulations]," Amended Complaint ¶ 229; "misplaced" reliance on inapplicable "decisional law," id. ¶ 230 n.29; and statutory interpretation that "rewrites the [applicable] statute in a way that Congress never intended."  Id. ¶ 231.  *Res judicata* and

2

issue preclusion bar this collateral attack on the Court's judgment and rulings. The Amended Complaint should be dismissed for this reason alone. *See* Point I, *infra.*

*Second*, the case should be dismissed as barred by the statute of limitations, the NEPA regulations and waiver for the same reasons articulated by this Court in its earlier decision. *See* Point II, *infra.*

## FACTUAL STATEMENT

The facts below are drawn from the Amended Complaint and two public documents cited in multiple paragraphs of the Amended Complaint: the SEA and FONSI.[2]

The Second Avenue Subway project (the "Project") has been under construction since 2007. *See* Amended Complaint ¶¶ 155, 161. One of the new subway stations now under construction is at E. 86th Street, a cross-town thoroughfare with four travel lanes, two parking lanes and a mixture of building types, most of which have commercial businesses at the ground-floor level. Id. at 1-9, 6-14, 6-22.

YT seeks to prevent the Metropolitan Transportation Authority and its affiliates (collectively, "MTA") from locating two sets of subway station escalators in the sidewalk on the north side of E. 86th Street between Second and First Avenues. Amended Complaint ¶ 6. More particularly, YT challenges the determination made by FTA and MTA in the FONSI and SEA that this entrance location does not require preparation of

---

[2]      The SEA and FONSI are exhibits to Docket Entry 25 in the prior litigation. They may be considered on a motion to dismiss because they are cited in the Amended Complaint and are the documents upon which plaintiffs' claims are founded. *See* Chambers v. Time Warner, Inc., 282 F.3d 147, 153-54 (2d Cir. 2002); Int'l Audiotext Network, Inc. v. AT&T Co., 62 F.3d 69, 72 (2d Cir. 1995); Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991); Matusovsky v. Merrill Lynch, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002); Rapoport v. Asia Electronics Holding Co., 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000).

an SEIS. Amended Complaint ¶¶ 68, 122, 143, 192, 201. YT also claims that an SEIS

must be prepared because – in 2011 and 2012, years after issuance of the FONSI and

after construction of the entrance began – YT came up with a new entrance design that

FTA and MTA are obligated to examine in an SEIS. Amended Complaint ¶¶ 238-240.

In its Amended Complaint, YT lets loose a fusillade of allegations that the

SEA and FONSI fell short in examining the environmental impacts of the new station

entrance. If this motion to dismiss is not granted, MTA will dispute these allegations, but

they are not addressed in this motion because dismissal is sought on the basis of *res*

*judicata,* collateral estoppel, the statute of limitations, the NEPA regulations and waiver.[3]

### A.      The FEIS and Record of Decision Were Issued in 2004.

In April 2004, FTA issued the final environmental impact statement

("FEIS") for the Second Avenue Subway. *See* FONSI at 2. The FEIS examined the

Project's impacts, both during construction and upon its completion, and identified

mitigation measures to ameliorate them. *See* SEA at F-1. On July 8, 2004, FTA issued a

Record of Decision for the Project (the "ROD"), based on the FEIS. *See* FONSI at 2.

The FEIS identified E. 86th Street as one of the locations for a subway

station, and indicated that one of its entrances would be at the northeast corner of Second

Avenue and E. 86th Street, within the Food Emporium supermarket, a tenant in YT's

building. *See* Amended Complaint ¶ 140.

---

[3]      If the motion to dismiss is denied, MTA's Answer will also plead laches, because it is too
late to stop the multi-million dollar construction work now underway and go back to
square one in the environmental review and engineering effort for this station entrance.

**B.    After the FEIS, MTA Identified Construction Difficulties with the Originally Proposed Location of the E. 86th Street Entrance.**

As the station design progressed and building inspections were performed, MTA engineers found that the proposed entrance in the Food Emporium supermarket presented serious construction difficulties.  Id.  To determine whether such complications could be avoided, MTA began exploring alternatives to the initial design.  SEA at F-2.

**C.    MTA Identified the E. 86th Street Alternatives.**

In its assessment of alternative entrance locations to the E. 86th Street subway station, MTA considered the expected ridership at the station, including the volume and geographic distribution of anticipated customers.  *See* SEA at 1-13 to 1-15. Next, MTA considered certain "entrance siting requirements," based upon criteria keyed to the size of the facility, its location, constructability and impact on the Project schedule. Id. at 1-15 to 1-16.  It also identified the "goals and objectives" to be served in the selection of the entrance location, including: (i) improving mobility (achieved by siting the entrance where it would best serve ridership demand); (ii) minimizing impacts to environmental conditions; and (iii) minimizing the time and cost of implementation.  Id.

MTA then considered seven potential alternatives in light of the goals, objectives and criteria it had identified.  It eliminated four of the alternatives as being infeasible or incapable of meeting Project requirements.  *See* SEA at 2-9 to 2-10, Appendix A; FONSI at 5-6.  The alternatives remaining after the initial screening were: Alternative "2," which would locate two pairs of escalators on the south side of E. 86th Street, east of Second Avenue, and an elevator at the southeast corner of Second Avenue and E. 86th Street; Alternative "5," which would locate five elevators in a newly constructed building on the southeast corner of Second Avenue and E. 86th Street; and

Alternative "7," which would locate two pairs of escalators on the north side of E. 86th Street, with one elevator at the southeast corner of the intersection. *See* SEA at 2-9 to 2-10, 2-12 to 2-15, Figure 2-10, Table 2-2.

The SEA identified Alternative 7 as the Preferred Alternative, *see* Yorkshire Towers Co., 2011 WL 6003959 **1-2, and it is this design that YT once again challenges in this litigation. With Alternative 7, the two escalator entrances will be located on the north side of E. 86th Street, in the sidewalk area in front of YT. Id. The westerly facing corner entrance will be located 21 feet from the building line at Second Avenue, close to the corner of Second Avenue and E. 86th Street and in front of the Food Emporium supermarket. *See* FONSI at 2. This entrance is to the west of the circular driveway in front of YT. *See* SEA Figure 2-10. The easterly facing entrance will be located to the east of the circular driveway in front of YT's building. Id.

**D.     The SEA Assessed the Environmental Impacts of the Alternatives.**

The SEA analysis begins with a description of the construction activities associated with each of the three entrance alternatives described above. *See* SEA at 3-10 to 3-15. It then presents an "environmental screening analysis," determining that these entrance alternatives would have no potential to change the conclusions of the FEIS in certain impact areas. Id. at 4-1 to 4-7. The SEA then drills down into the potential impacts of each alternative on the relevant environmental areas: transportation (including subway station access, vehicular traffic and parking, surface transit, pedestrian conditions), social and economic conditions, displacement and relocation, historic and archaeological resources, air quality, and noise and vibration. Id., chapters 5-11. The SEA found that the Preferred Alternative would not result in new significant environmental impacts in any of these areas. Id. at S-2.

6

**E.     MTA Engaged In Extensive Public Outreach As To The Change In The Design of the 86th Street Subway Station.**

Public presentations of the potential alternatives for the E. 86th Street Station began in 2008. *See* FONSI Attachment A at 39-40. On July 29, 2008, a presentation was made to a public meeting of the Community Board 8 Second Avenue Subway Task Force regarding potential design modifications for the 86th Street Station. Alternatives 2 and 7 were presented at that time. Id.

The public review of the SEA began with its publication in May 2009. A *Notice of Availability* was published in local newspapers, and the SEA was posted on MTA's website and made available for review at the offices of the MTA, FTA and Community Board 8. Id. On June 18, 2009, a duly noticed public hearing was held to receive comments on the SEA. *See* Yorkshire Towers Co., 2011 WL 6003959 *2. The public comment period closed on July 31, 2009. Id.

**F.     FTA Issued the FONSI on October 29, 2009.**

On October 29, 2009, based upon the FEIS, the SEA and the hearing record and its evaluation of the public comments, FTA issued the FONSI, in which it found that the Preferred Alternative "will result in no significant impacts on the environment beyond those identified in the FEIS and ROD" and that further study in an SEIS is not warranted. FONSI at 1, 14; Yorkshire Towers Co., 2011 WL 6003959 *2. The FONSI summarized the purpose and need for the proposed relocation of the entrance, outlined the siting requirements for the entrance and identified the alternatives considered.[4] *See* FONSI at 3-6. Then, drawing on the SEA, FTA summarized the

---

[4]      In addition to the SEA-identified alternatives, FTA evaluated an alternative proposed by Civitas during the comment period and also examined a three escalator alternative in the general area of YT's new alternative. *See* FONSI, Attachment A at 9-14 & Figure 1.

environmental impacts of the Preferred Alternative and considered the impacts against

those of the other alternatives analyzed in the SEA, before concluding that Alternative 7

is the best design choice for the station entrance. Id. at 7-13. The FONSI addressed each

substantive public comment received, including those made by YT and its attorneys. *See*

FONSI Attachment A at 2-3, 8-9, 14, 18-20, 24-26, 30-31, 33.

> **G.     FTA Published Notice of the FONSI on December 9, 2009.**

On December 9, 2009, FTA published a notice announcing its final

determinations for several projects, including the Second Avenue Subway. *See* Notice of

Limitation on Claims Against Proposed Public Transportation Projects, 74 Fed. Reg.

65,203 (Dec. 9, 2009); Yorkshire Towers Co., 2011 WL 6003959 *2. Among the actions

announced in the notice was the "FONSI signed October 29, 2009" for "design revisions

of the northern entrances to the 72nd Street and 86th Street Stations." 74 Fed. Reg. at

65,204. The notice stated that, under the applicable 180-day statute of limitations (23

U.S.C. § 139(l)(1)), "[a] claim seeking judicial review of the FTA actions announced

herein for the listed public transportation projects will be barred unless the claim is filed

on or before June 7, 2010." Id. at 65,203.

> **H.     YT Initiated NEPA Litigation In This Court To Require an SEIS For The E. 86th Street Subway Entrance.**

On February 16, 2011, after the expiration of the 180-day limitations

period on June 7, 2010, YT filed the prior lawsuit challenging the agencies' decision to

locate the subway entrance in front of YT's building on E. 86th Street. YT made two

arguments to support its NEPA claim. First, it asserted that the FTA-approved entrance

design would result in environmental impacts that had not been identified in the SEA and

FONSI, and that FTA had erred in determining that an SEIS is not required for that

design. Second, it asserted that an SEIS should be prepared to study a new design conceived by its advisors (led by Edward L. Cohen) on the south side of E. 86th Street. (In the instant lawsuit, Mr. Cohen and his team have devised yet another new design, this time on the north side of E. 86th Street.)

 On October 25, 2011, FTA and MTA moved to dismiss the NEPA claim on the ground that it was barred by the statute of limitations. FTA and MTA further argued that the applicable NEPA regulations do not require that the NEPA process – which concluded with the FONSI – be re-opened to consider a new design alternative.

### I.   This Court Dismissed YT's Prior NEPA Litigation.

 On December 1, 2011, this Court dismissed YT's litigation. The Court ruled that YT had failed to commence the lawsuit within the 180-day statute of limitations period, and that its claims concerning the alleged inadequacy of the SEA and FONSI were time-barred. Yorkshire Towers Co., 2011 WL 6003959 *5-6.

 The Court acknowledged that there is a "de facto exception to the statute of limitations" created by the concept of "new information" in 23 U.S.C. § 139(l)(2). Yorkshire Towers Co., 2011 WL 6003959 *4. However, citing the regulatory provision specifying the circumstances in which an SEIS may be required (23 C.F.R. § 771.130(a)), the Court held that a suggested new alternative does not constitute the sort of "new information" that triggers the need for an SEIS, because under the regulation the "new information" must bear on the agency's selected action or its environmental impacts. Id. In addition, the Court determined that "failure to raise an alternative before the close of the comment period waives one's right to challenge the agency's evaluation of reasonable alternatives." Id. *7 (citing North Idaho Community Action Network, 545 F.3d 1147, 1156 n.2 (9th Cir. 2008)). YT appealed the decision, but later withdrew its appeal.

**J.      YT's Amended Complaint In This NEPA Litigation Raises The Same
Claim Litigated In The Previous NEPA Litigation.**

The new lawsuit raises the same arguments and makes the same claim that
this Court dismissed in the earlier NEPA litigation.  As in the first lawsuit, the Amended
Complaint asserts that supposed "new information" necessitates preparation of an SEIS,
and that YT's design choice is superior to the Preferred Alternative.  The table below
compares the allegations presented in the Amended Complaint with those YT made in the
prior litigation.

| Comparison of YT's Arguments In This NEPA Litigation To Those YT Presented In The Prior NEPA Litigation | | |
|---|---|---|
| **YT Amended Complaint In This Lawsuit** | **YT Filings In Its Prior Lawsuit** | **Docket Entry In Prior Lawsuit** |
| YT is seeking only a limited SEIS on the subway entrance in front of its building (Amended Complaint ¶ 1) | Complaint dated Feb. 16, 2011 ("Complaint") ¶ 246 | 1 |
| Allegations made as to the views of the "Coalition of East Side Elected Officials" (Amended Complaint ¶¶ 2, 88) | Complaint ¶¶ 13-17 | 1 |
| The "New Design Guidelines" were approved by the Station Project Review Committee (Amended Complaint ¶ 63) | Cohen Declaration dated Oct. 11, 2011 ("Cohen Dec.") ¶ 6 | 45 |
| In 2009 FTA should have required an SEIS rather than relying upon the SEA to issue a FONSI (Amended Complaint ¶ 68) | Complaint ¶ 239 | 1 |
| The "New Design Guidelines" state that corner entrances are "preferred" over mid-block entrances (Amended Complaint ¶ 69) | Cohen Dec. ¶ 7 | 45 |
| YT's alternative design, prepared by Mr. Cohen and his colleagues years after the NEPA process, is superior to the FTA-approved design  (Amended Complaint ¶¶ 68, 91, 107) | Cohen Dec. ¶ 20; Lutin Declaration dated Oct. 12, 2011 ("Lutin Dec.") ¶¶ 6-9 | 45, 47 |
| MTA and FTA failed to prepare environmental studies for YT's alternative design, proposed after conclusion of the NEPA process (Amended Complaint ¶¶ 68, 218) | YT Reply Memorandum in Support of Mot. for P.I. dated Oct. 28, 2011 ("Reply Memo") at 13 | 55 |

| | | |
|---|---|---|
| FTA-approved design deviates from the "New Design Guidelines" (Amended Complaint ¶ 73) | Cohen Dec. ¶ 9; Cohen Reply Declaration dated Oct. 28, 2011 ("Cohen Reply Dec.") ¶¶ 6-14 | 45, 56 |
| FTA-approved design will endanger pedestrians due to proximity to driveways and inadequate "sight distances" (Amended Complaint ¶¶ 75, 79-80, 122-138) | Complaint ¶¶ 130, 156, 243; Cohen Reply Dec. ¶¶ 21, 32 | 1, 56 |
| FTA-approved design violates a Mayoral Executive Order relating to 10' set backs from the building line (Amended Complaint ¶ 102, 125-138) | Cohen Reply Dec. ¶ 21 | 56 |
| YT is a large apartment building with many residents, including the elderly and children (Amended Complaint ¶¶ 6, 77) | Complaint ¶ 1 | 1 |
| MTA should not be concerned that a redesign of the station entrance would delay construction (Amended Complaint ¶ 116) | Complaint ¶ 29 | 1 |
| FONSI discussion of pedestrian safety is flawed, incomplete and disingenuous (Amended Complaint ¶ 122) | Complaint ¶¶ 128, 130, 156 | 1 |
| FTA-approved design requires excavation of a large amount of material using disruptive "cut and cover" technique, rather than "mining" and will exacerbate construction-related impacts (Amended Complaint ¶¶ 139, 169-171) | Complaint ¶ 194; Cohen Dec. ¶ 23 | 1, 45 |
| The disruptive "cut and cover" construction could damage YT's building/foundation/pool (Amended Complaint ¶ 169-171 | YT chose not to raise issue in prior litigation | N/A |
| FTA-approved design will result in excessive pedestrian crowding on sidewalks (Amended Complaint ¶ 143) | Complaint ¶¶ 145, 149 | 1 |
| SEA should have examined scenario in which one of the four escalators is taken out of service for maintenance (Amended Complaint ¶¶ 143-144) | Lutin Reply Dec. ¶¶ 59-60, 64 | 57 |
| FTA-approved design involves a 6-foot "bump out" into the parking lane on E. 86th Street (Amended Complaint ¶ 149) | Complaint ¶ 122 | 1 |
| FTA-approved design is costly (Amended Complaint ¶ 161) | Complaint ¶¶ 30-32, 159-62 | 1 |

| | | |
|---|---|---|
| FTA-approved design requires the removal of much more rock and soil through "cut and cover" construction than YT's alternative (Amended Complaint ¶¶ 163-173, 184-186) | Cohen Dec. ¶ 23 | 45 |
| Extra width of lane on a portion of E. 86th Street could cause speeding (Amended Complaint ¶¶ 149, 154) | YT chose not to raise issue in prior litigation | N/A |
| SEA improperly dismissed concerns with respect to jaywalking (Amended Complaint ¶ 174) | Complaint ¶¶ 130-31 | 1 |
| Construction of the FTA-approved design will take place in front of YT, disrupting traffic flow and slowing vehicles (Amended Complaint ¶ 58) | Cohen Dec. ¶¶ 25-26 | 45 |
| SEA failed to examine whether construction of the FTA-approved design will interfere with YT's maintenance work on its building using City sidewalks (Amended Complaint ¶¶ 177-183) | YT chose not to raise issue in prior litigation | N/A |
| FTA and MTA placed undue emphasis on passenger convenience (Amended Complaint ¶ 191) | Complaint ¶ 9 | 1 |
| SEA erred in allegedly assuming that 68% of ridership will use the entry kiosk east of the YT driveways (Amended Complaint ¶ 192) | Complaint ¶¶ 7, 128 | 1 |
| Locating a subway entrance near Second Avenue would encourage patronage of retail stores on Second Avenue (Amended Complaint ¶ 196) | YT chose not to raise issue in prior litigation | N/A |
| Having one point of entry rather than two would reduce burdens on the police force and homeland security (Amended Complaint ¶ 197) | YT chose not to raise issue in prior litigation | N/A |
| FTA-approved design, by having two points of entry rather one and a large below-grade mezzanine, would make the station entrance more susceptible to flooding (Amended Complaint ¶¶ 198-202) | YT chose not to raise issue in prior litigation | N/A |
| YT's alternative design would meet MTA's goals and objectives (Amended Complaint ¶ 203) | Cohen Dec. ¶ 20 | 45 |
| YT has presented "new information," as that term is described in NEPA regulations, thus providing an exemption from the 180-day limitations period (Amended Complaint ¶¶ 226-232) | YT's Memorandum of Law in Opposition to Motion to Dismiss at 4-20 | 43 |
| This Court's decision in the prior NEPA Litigation was wrong (Amended Complaint ¶¶ 215-237) | Notice of Appeal | 68 |

## POINT I

## YT's CLAIM IS BARRED BY CLAIM AND ISSUE PRECLUSION

YT's second NEPA challenge to the same FTA-approved design for the 86th Street station entrance is barred by claim and issue preclusion.

### A.     Claim Preclusion Bars The Claim In The Amended Complaint.

The doctrine of claim preclusion, or *res judicata*, provides that a "'final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were *or could have been* raised in that action.'" Gertskis v. U.S. E.E.O.C., 11 Civ. 5830, 2013 WL 1148924 *20 (S.D.N.Y. March 20, 2013) (citation omitted, emphasis added).  "Courts give res judicata effect to final judgments to 'relieve parties of the cost and vexation of multiple lawsuits, [to] conserve judicial resources, and, by preventing inconsistent decisions, [to] encourage reliance on adjudication.'" Mahmood v. Research in Motion LTD., 12 Civ. 899, 2012 WL 5278470 *2 (S.D.N.Y. Oct. 25, 2012) (quoting Allen v. McCurry, 449 U.S. 90, 94 (1980)).  *Res judicata* may be asserted on a motion to dismiss.  Day v. Moscow, 955 F.2d 807, 811 (2d Cir. 1992) ("when all relevant facts are shown by the court's own records, of which the court takes notice, the [*res judicata*] defense may be upheld on a Rule 12(b)(6) motion").

*Res judicata* bars a subsequent lawsuit when a prior action: (i) was "an adjudication on the merits"; (ii) involved the same parties, or those in privity with them; and (iii) "the claims asserted in the subsequent action were, *or could have been*, raised in the prior action." Monahan v. N.Y. City Dep't. of Corr., 214 F.3d 275, 285 (2d Cir. 2000) (emphasis added).  Each element is met here.

First, the "longstanding rule in this Circuit . . . is that a dismissal for failure to comply with the statute of limitations will operate as an adjudication on the merits." PRC Harris, Inc. v. Boeing Co., 700 F.2d 894, 896 (2d Cir. 1983) (citing cases); *see also* Michaelesco v. Estate of Richard, 355 Fed. Appx. 572, 2009 WL 4724638 (2d Cir. 2009) (upholding dismissal of second complaint on *res judicata* grounds due to dismissal of earlier case as time-barred); Mahmood, 2012 WL 5278470 *3 (same). In the prior lawsuit, the Court held that YT's claim was "barred by the statute of limitations," dismissing the case without leave to amend. Yorkshire Towers Co., 2011 WL 6003959 *7. Further, the Court dismissed the prior lawsuit on the ground of waiver, holding that YT's failure to raise its alternative during the comment period waived any right to challenge FTA's determination on the basis of that alternative. Id. As such, YT's prior action was adjudicated on the merits.

Second, there is identity of parties between the first YT lawsuit and this one; each plaintiff and defendant in this case was a party in the prior case.[5]

Finally, the claim asserted by YT in this litigation was, or could have been, asserted in its first lawsuit. The similarity of claims is assessed "in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to support the second were present in the first." Monahan v. N.Y. City Dep't. of Corr., 214 F.3d at 285 (citing NLRB v. United Technologies Corp., 706 F.2d 1254, 1260 (2d Cir. 1983)). "'Transaction' must be given a flexible, common-sense construction that recognizes the

---

[5]    The prior action named "Jay Walder, in his capacity as Chairman of the Metropolitan Transportation Authority" and this one names "Fernando J. Ferrer, in his capacity as Acting Chairman of the Metropolitan Transportation Authority," but the change in names reflects only a change in the identity of the MTA Chairman.

reality of the situation." Id. at 289 (citation omitted). *See also* Gertskis v. U.S. E.E.O.C., 2013 WL 1148924 **20-21 ("the doctrine precludes not only those claims that were raised in the prior action, but also those involving the same transaction or connected series of transactions that 'could have been raised in that action.'" (citation omitted)).

While YT has attempted to craft its claim as if it were a challenge to defendants' alleged failure to consider its new alternative, at bottom its challenge is to the 2009 decision made in the FONSI that the FTA-approved entrance in front of YT's building will not have any significant new environmental impacts and does not warrant preparation of an SEIS. As the Court found in the first YT case, "[s]uing on the basis of a new alternative or a revised alternative after the final decision has been made is an attack on the decision itself." Yorkshire Towers Co., 2011 WL 6003959 *6. Thus, YT's claim that its new alternative should be studied in an SEIS (*see* Amended Complaint ¶ 239) is yet another untimely attack on the FTA's finding with respect to the subway entrance design made in the FONSI. For this reason, the transaction at issue in the instant NEPA lawsuit and YT's prior NEPA lawsuit is one and the same – FTA's issuance of the FONSI for the Preferred Alternative. The fact that in the prior litigation YT proposed a different entrance alternative than the one it now advances does not distinguish the "transaction" at issue in the prior lawsuit from the one at issue in this lawsuit.

In the prior lawsuit, the Court held that the term "new information" in the NEPA regulations encompasses information as to: (i) post-decision *changes* to the proposed action or (ii) the *environmental impacts* of the proposed action. Yorkshire Towers Co., 2011 WL 6003959 *5-6. The Court held that YT had not presented "new information or circumstances that bear on the proposed action or its impacts, but rather a

suggested alternative . . . to that proposed action" and that information about an alternative was not "new information" as that term is defined in the NEPA regulations. Id. at *6. Likewise, the alleged "new information" referenced in the Amended Complaint is not "new information" as that term is defined in the NEPA regulations because it is pleaded for its asserted value in showing the benefits of YT's proposed design alternative (see Amended Complaint ¶ 239), and thus is "not new information within the meaning of the relevant statute and regulation." Yorkshire Towers Co., 2011 WL 6003959 *6. In raising a new design alternative and again pleading criticisms of the environmental impact conclusions of the SEA and FONSI, YT is merely seeking to take a second crack at challenging the FTA's selection of the Preferred Alternative in 2009.

That this new lawsuit involves the same "transaction" as the previous one is further illustrated by the table *supra* at 10-12, which demonstrates that YT advanced almost all of the allegations pleaded in its Amended Complaint in the prior lawsuit. *See, e.g.,* Michaelesco, 2009 WL 4724638 *1 (dismissal for *res judicata* where first complaint asserted "claims arising from the same facts described in [the] instant complaint"). Moreover, with respect to the ancillary assertions that were not explicitly brought forward by YT in 2011, YT makes no allegation that these allegations could not have also been included in the prior lawsuit. For example, YT does not allege that it could not have known in 2011 about potential pedestrian economic benefits to Second Avenue retail stores; local and federal security considerations; the existence of hurricanes and Northeasters; the potential need for it to make repairs on its building; or the 12' width of one of the travel lanes on E. 86th Street. *See* Amended Complaint ¶¶ 149, 154, 196-202.

*Res judicata* has barred re-litigation of other NEPA claims arising out of the same series of facts as earlier NEPA litigation, even in the face of new allegations. In Highway Citizens Group v. U.S. Dep't of Transportation, 456 F.3d 734, 737-38 (7th Cir. 2006), the plaintiffs had previously challenged the EIS and EA for two highway development projects, arguing that the agency had failed to comply with, *inter alia*, NEPA standards. In that earlier case, the court had determined that the agency had in fact complied with NEPA and ruled against the plaintiffs on the merits. Id. at 738. The second case likewise challenged the approval of the highway projects, despite the fact that construction had already begun. Id. at 739, 736-37. Even though some of the plaintiffs' claims in the second case regarding the EA were different from those in the earlier action, the court found that they "arose from the same document" and that "the underlying factual transaction is identical," therefore plaintiffs could have brought those claims the first time around. Id. at 742-44. Thus, the court held that "res judicata bars the plaintiffs from further pursuing their challenges" to the highway projects. Id. at 744. *See also, e.g.,* Alaska Forest Ass'n v. Vilsack, 883 F. Supp. 2d 136, 143-44 (D.D.C. 2012) (although plaintiffs had abandoned NEPA claims in first case, NEPA claims in subsequent action are still barred under *res judicata* because plaintiffs "might have pursued the claimed violations of . . . NEPA in the original suit") (internal quotations omitted); Fund for Animals, Inc. v. Lujan, 794 F. Supp. 1015, 1022-24 (D. Mont. 1991) (earlier challenge to EA under NEPA precludes later challenge to failure to prepare an EIS; the suits had the same goal and implicated the same laws and regulations).

Because the instant litigation also arises from the same transaction as the prior lawsuit, YT is barred by *res judicata* from pressing a second NEPA challenge to the

17

E. 86th Street substation station entrance approved by FTA in 2009, and the new allegations do nothing to avoid that result.

YT's byzantine critique of this Court's final judgment in the prior NEPA litigation (*see* Amended Complaint at ¶¶ 226-235), in addition to being wholly unpersuasive, presents arguments that YT could have made in appealing that judgment. Having chosen to withdraw its appeal,[6] YT cannot collaterally attack the judgment in this lawsuit, notwithstanding its disingenuous assertion that the new lawsuit raises an issue of "first impression." Amended Compliant ¶ 230 (asserting that the earlier litigation did not involve a reading of a sub-part of the regulation discussed at length in Judge Griesa's opinion). Although YT asserts that it did not brief a discussion of certain regulations in its first lawsuit (Amended Compliant ¶¶ 230, 234), it provides neither an explanation for why it chose not to do so nor a legally cognizable rationale for why this Court should permit it to resuscitate its withdrawn appeal in a new litigation.

**B.    Issue Preclusion Bars The Claim In The Amended Complaint.**

"'[A] right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies." In re Indu Craft, Inc., 11 Civ. 5996, 2012 WL 3070387 *1 (S.D.N.Y. July 27, 2012) (quoting Montana v. United States, 440 U.S. 147, 153 (1979)). Issue preclusion prohibits a party and its privies "from relitigating in a subsequent action any issue of fact or law that was fully and fairly litigated in a prior proceeding, regardless of whether it is in the same cause of action." In re Indu Craft,

---

[6]     YT provides an elaborate explanation as to why it withdrew its appeal. *See* Amended Complaint ¶ 231 n. 30. But YT's motivations are irrelevant to the effect of its withdrawal on the finality of this Court's final judgment.

2012 WL 3070387 *10 (internal quotations omitted). The primary issues of fact and law raised in YT's new Amended Complaint were fully and fairly litigated in the first case. The Court in the 2011 action determined that YT's case was brought outside the limitations period, and that, as a result, its claims were barred. *See* Yorkshire Towers Co., 2011 WL 6003959 *7. The Court also determined that a new alternative is not the sort of new information that requires an agency to prepare an SEIS, and that YT had waived any right to have new alternatives considered by failing to raise them during the public comment period on the SEA. Id. **6-7.

YT had ample opportunity in 2011 to argue why the statute of limitations was not applicable, and it was unsuccessful. YT presented its interpretation of NEPA's "new information" regulations in the first lawsuit, as it again does here. *Compare* YT's Mem. of Law in Opposition to Motion to Dismiss at 4-13 (Docket No. 43) *with* Amended Complaint ¶¶ 208-237. In the current litigation, YT again presents an alternative design, and again claims that FTA and MTA did not consider allegedly "new" information that YT believes supports that alternative. *See* Amended Complaint ¶ 239. But in the prior litigation, this Court held that asserted new information concerning a new alternative neither invokes the exception to the statute of limitations nor reopens the NEPA process under 23 C.F.R. § 771.130(a). YT is precluded from re-litigating these issues.

Similarly, in Wilder v. Thomas, 854 F.2d 605, 616-20 (2d Cir. 1988), the court held that a decision dismissing plaintiffs' challenges to an EIS collaterally estopped their similar claims in a subsequent action.[7] The plaintiffs in Wilder had previously filed

---

[7] While Wilder assessed New York state collateral estoppel requirements, pursuant to 28 U.S.C. § 1738, they are functionally equivalent to federal requirements. *Compare* Wilder, 854 F.2d at 617 *with* In re Indu Craft, 2012 WL 3070387 *11.

a state court action asserting that the EIS did not identify adequate mitigation for traffic and air quality impacts. The state court disagreed, finding that the mitigation measures imposed by the agency were sufficient. Id. at 617-18. Plaintiffs' subsequent federal case likewise challenged the adequacy of the mitigation measures. In holding that the issues raised were essentially the same, the Wilder court looked to the language of the pleadings in the two cases and the relief requested by the plaintiffs – "review of the sufficiency of the project's mitigation measures." Id. at 619-20.

YT has already fully litigated – and lost – its claim that its proposal of a new design alternative allows it to take advantage of the statutory exception to NEPA's limitations period or constitutes grounds for re-opening the NEPA process under 23 C.F.R. § 771.130(a). YT is collaterally estopped from litigating this issue again.

### POINT II

### YT's CLAIM IS BARRED BY THE STATUTE OF LIMITATIONS, THE NEPA REGULATIONS AND WAIVER

Even if this case were not a functional repeat of the earlier litigation, the claim that YT pleads would be barred by the applicable 180-day statute of limitations, the language of the applicable NEPA regulations and waiver, for the same reasons this Court articulated in Yorkshire Towers Co., 2011 WL 6003959 **6-7.

The Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users ("SAFETEA-LU") requires that

> a claim arising under Federal law seeking judicial review of a[n] ... approval issued by a Federal agency for a ... public transportation capital project shall be barred unless it is filed within 180 days after publication of a notice in the Federal Register announcing that the ... approval is final pursuant to the law under which the agency action is taken,

20

> unless a shorter time is specified in the Federal law
> pursuant to which judicial review is allowed.

23 U.S.C. § 139(l)(1) (2011). The plain language of this provision makes clear that

Congress intended to create a maximum period of 180 days – measured from the date of

publication of the Federal Register notice announcing the approval – in which parties

with potential claims regarding approval of a transportation project may challenge the

project. Claims asserted after that date "shall be barred." Id. The title of this statutory

section – "Efficient environmental reviews for project decisionmaking" – makes clear

that Congress imposed the 180-day limitations period to streamline the review and

implementation of transportation projects. See John W. Fischer, Cong. Research Serv.,

RL33119, Safe, Accountable, Flexible, Efficient Transportation Equity Act – A Legacy

for Users, 29 (2005) ("intended effect" of SAFETEA-LU is "to expedite compliance with

certain environmental requirements").[8]

The 180-day limitations period for YT's NEPA claim began to run on

December 9, 2009 when FTA published a Federal Register notice announcing final

agency actions for a number of projects, including the Second Avenue Subway. FTA

explained that the "purpose of this notice is ... to activate the limitation on any claims

that may challenge these final environmental actions." 74 Fed. Reg. 65203 (Dec. 9,

2009). Thus, in accordance with the notice and the above-cited provision of SAFETEA-

LU, the limitations period for challenges to the FONSI expired on June 7, 2010.

Moreover, SAFETEA-LU's "Limitations on Claims" provision requires

consideration of new information only "if the information satisfies the requirements for a

---

[8]    On July 6, 2012, Congress amended 23 U.S.C. § 139(l)(1) by changing "180 days" to
"150 days." See Moving Ahead for Progress in the 21st Century Act, Pub. L. 112-141 §
1308. The difference between 180-days and 150-days is immaterial to the instant motion.

supplemental environmental impact statement under section 771.130 of title 23, Code of Federal Regulations." 23 U.S.C. § 139(l)(2).  The "new information" cited by YT does not warrant an SEIS under this regulatory provision.

Under § 771.130, only two kinds of new information may trigger the need to prepare an SEIS.  First, a supplemental review is required where an agency proposes "changes to the proposed action" and such changes would result in new "significant environmental impacts" not previously considered.  23 C.F.R. § 771.130(a)(1).  This provision is not relevant here, because YT has not alleged that MTA has made any changes to the 86th Street Station entrance since the FONSI was issued in 2009.

Second, an SEIS may be required where "[n]ew information or circumstances relevant to environmental concerns and *bearing on the proposed action or its impacts* would result in *significant environmental impacts not evaluated in the EIS*." 23 C.F.R. § 771.130(a)(2) (emphasis added).  Thus, an agency need not consider in a supplemental environmental review every shred of new information that turns up after completion of the NEPA process.  Rather, that obligation arises only where the information bears "on the proposed action or its impacts" and "would result in significant environmental impacts" not previously addressed.

The limits codified in § 771.130(a)(2) on the "new information" to be considered after conclusion of the NEPA process are in accord with NEPA jurisprudence. "[A]n agency need not supplement an EIS every time new information comes to light after the EIS is finalized.  To require otherwise would render agency decision-making intractable." Marsh v. Ore. Natural Res. Council, 490 U.S. 360, 373 (1989).  Rather, an SEIS is required only where "the new information is sufficient to show that *the remaining*

*action* will 'affec[t] the quality of the human environment' in a significant manner or to a significant extent not already considered." Id. at 374 (emphasis added). Thus, the "new information" must be on the environmental impacts of the remaining construction elements of the design that FTA approved in 2009, not on an alternative course of action.

The Amended Complaint alleges that NEPA requires an SEIS to study YT's new alternative. An alternative, however, is not "new information" bearing on the proposed action or its impacts. *See* Yorkshire Towers Co., 2011 WL 6003959 *6; North Idaho Commun. Action Network, 545 F.3d at 1155 ("[a]n agency is not required by NEPA to consider new *alternatives* that come to light after issuance of the EIS absent 'substantial changes in the proposed action relevant to environmental concerns,' or 'significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts'" (quoting NEPA regulations)). Since YT's new alternative is not "new information" bearing on the proposed action or its impacts, it does not require an SEIS. Id.; *cf.* Friends of the River v. FERC, 720 F.2d 93, 109 (D.C. Cir. 1983) (NEPA does not require "an agency ... [to] circulate a formal supplemental EIS, or a formal document explaining why the agency believes a supplemental EIS is unnecessary, every time some new information comes to light.").

Moreover, YT waived any contention that its new alternative should be considered under NEPA because it failed to raise the alternative during the public comment period on the SEA in 2009. *See* Yorkshire Towers Co., 2011 WL 6003959 *7 (citing North Idaho Community Action Network, 545 F.3d at 1156 n.2).

Finally, it is apparent on the face of the Amended Complaint that there is nothing "new" about the "new information" YT claims to have identified about the

station entrance approved in 2009. YT's allegations as to pedestrian hazards arising from the driveways on E. 86th Streets (Amended Complaint ¶¶122-38) were raised during the public comment period in 2009. *See* FONSI, Attach. A at 24. YT cites an Executive Order titled "Sidewalk Corner Clearances," but it was issued on April 13, 1995 (and in any event is irrelevant because by its terms it is inapplicable to locations other than sidewalk corners). YT cites the use of surface cut and cover construction and the excavation of 300,000 cubic feet of material for the entrance and resulting potential air quality impacts (Amended Complaint ¶¶ 139, 184-86), but these issues were discussed in the SEA. *See* SEA at 3-15, 10-8. YT argues that one of the four escalators in the approved design could be out of service for repairs (Amended Complaint ¶¶ 143-44), but this is not new information; moreover, YT's alternative design includes one fewer escalator, exacerbating the effect of taking one escalator out of service. YT cites the duration of construction (Amended Complaint ¶¶ 145-47), but the duration of the construction period was also discussed in the SEA. *See* SEA at 3-15. YT cites the size of the sidewalk bump-out and the resulting width of the E. 86th Street travel lanes (Amended Complaint ¶¶ 148-160), but none of this information is new; moreover, the City of New York can always narrow the width of the travel lanes if it deems that to be prudent. YT alleges that the sidewalk entrance is costly (id. ¶¶ 161-62), but cost, in and of itself, is not an environmental impact warranting an SEIS. YT cites the risks of blasting (id. ¶¶ 163-68), but blasting of subsurface rock was discussed in the FEIS and is a common construction practice in Manhattan; it is not new information. YT alleges that it has a 1970s-era swimming pool (id. ¶ 169), but this is not new information; moreover, the necessity of bracing excavation to prevent damage to adjoining buildings is a common

construction issue in New York City and is not new information. Jaywalking concerns (id. ¶ 174) were addressed in the FONSI (at Attachment A at 24) and are not new information. Temporary construction-period effects on YT's driveways (Amended Complaint ¶¶ 175-76) were also addressed in the FONSI (Attachment A at 23). YT claims that construction could interfere with the maintenance of its building by occupying the sidewalk for a temporary period (Amended Complaint ¶¶ 177-183), but the occupancy of this sidewalk area during construction is not new information. The Amended Complaint cites 2010 census data (id. ¶ 194), but does not explain how such data are materially different than the earlier demographic data about the area of the station. The proximity of the entrance kiosks to Second Avenue (Amended Complaint ¶ 196) or the difference between one and two station entry points (id. ¶ 197) is not new information. Finally, the potential for hurricanes in New York City (Amended Complaint ¶¶ 198-202) is not new information.

YT's challenge on these issues should have been brought within the 180-day limitations period.

## CONCLUSION

MTA's motion to dismiss should be granted.

Dated: New York, New York
      April 22, 2013

Respectfully submitted,

BRYAN CAVE LLP

By: _____

    Philip E. Karmel (pekarmel@bryancave.com)
    J. Kevin Healy (jkhealy@bryancave.com)
    Laura A. Williams (not admitted in New York)
1290 Avenue of the Americas
New York, New York  10104
Telephone: 212-541-2311

/s/

_____

Gordon J. Johnson (gojohnso@mtahq.org)
Deputy General Counsel
Metropolitan Transportation Authority
347 Madison Avenue – 9th Fl.
New York, NY  10017
Telephone: 212-878-4633

/s/

_____

John C. Abili (jabili@mtacc.info)
Deputy General Counsel
MTA Capital Construction
2 Broadway – 8th Floor
New York, NY 10004
Telephone: 646-252-3239

*Attorneys for Metropolitan Transportation
Authority, Fernando J. Ferrer in his capacity as its
Acting Chairman, New York City Transit Authority,
Thomas F. Predergast, Jr. in his capacity as its
President, Metropolitan Transportation Authority
Capital Construction Company, and Michael
Horodniceanu in his capacity as its President*